STATE OF NORTH CAROLINA v. GREGORY LAVON LOVE

No. COA02-271

(Filed 4 March 2003)

## 1. Evidence— hearsay—recorded recollection

The trial court did not abuse its discretion in a communicating threats case under N.C.G.S. § 14-277.1, involving a domestic disturbance between defendant and his wife, by permitting an officer to read the statement of defendant's wife into evidence even though defendant contends the State failed to lay a proper foundation under N.C.G.S. § 8C-1, Rule 803(5) for a recorded recollection based on the fact that defendant's wife did not sign the statement, because: (1) defendant's wife testified that she

remembered making a statement describing the events of that night to an officer, she made the statement when the events of the night were fresh in her mind, she no longer had sufficient recollection as to the matter, and the statement was read back to her; and (2) an officer testified that defendant's wife was given an opportunity to edit the statement, but she declined to do so and thereby adopted it.

**2. Threats— communicating threats—subjective belief—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of communicating threats under N.C.G.S. § 14-277.1, because there was sufficient evidence that defendant's wife subjectively believed that defendant intended to carry out his threats.

**3. Probation and Parole— longer period of probation—specific findings of fact required**

The trial court erred in a communicating threats case by extending defendant's probationary period to twenty-four months without making the required specific findings of fact that a longer period of probation was necessary as required by N.C.G.S. § 15A-1343.2(d).

Appeal by defendant from judgment entered 23 May 2001 by Judge Robert P. Johnston in Superior Court, Mecklenburg County. Heard in the Court of Appeals 21 January 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Gaines M. Weaver, for the State.*

*Isabel Scott Day, Public Defender, by Assistant Public Defender Julie Ramseur Lewis, for the defendant-appellant.*

WYNN, Judge.

Following a jury trial, defendant, Gregory Lavon Love, appeals his conviction for communicating threats during a domestic disturbance with his wife, LaQuita Love. After the alleged incident, Ms. Love made a statement to police incriminating her husband. At trial, however, Ms. Love testified that she could not remember any facts tending to incriminate Mr. Love. During direct examination, Ms. Love did recall: (1) making the statement to police; (2) while the events of the night and incident were still fresh in her mind; and that (3) the state-

ment was read back to her. Moreover, a police officer testified that Ms. Love was given an opportunity to edit the statement, and that Ms. Love did not edit the statement. Accordingly, the trial court allowed the statement to be read into evidence pursuant to North Carolina's hearsay exception for recorded recollections codified at N.C. Gen. Stat. § 8C-1, Rule 803(5) (2002).

On appeal, Mr. Love assigns error to: (1) the admission of Ms. Love's recorded recollection because it was not signed by Ms. Love; (2) the trial court's denial of Mr. Love's motion to dismiss; and (3) the trial court's decision to sentence Mr. Love to a twenty-four month period of supervised probation, where N.C. Gen. Stat. 15A-1343.2(d) only authorizes an eighteen month probationary period without specific findings of fact by the trial court. After carefully reviewing the record, we hold that Mr. Love received a trial free from error during the substantive phase. However, because the trial court violated its statutory mandate during the sentencing phase, we vacate in part and remand for resentencing.

The State's evidence tended to show that Police Officers Larry J. Angle, Jr. and David L. Phillips responded to a domestic disturbance at the defendants residence in the early morning of 15 August 2000. Upon arriving at the scene, Officer Angle noticed a female, later identified as Ms. Love, shaking and crying. Ms. Love explained to the officers that her husband, who had left the scene, had repeatedly threatened to punch her. As Ms. Love was giving her initial statement, Mr. Love drove his vehicle over the grass and onto the driveway of the residence. Upon seeing the vehicle, Ms. Love began to cry. Officer Angle approached Mr. Love and asked him for identification. Mr. Love refused. Officer Angle explained to Mr. Love that he needed to speak with him regarding the events of the night. Mr. Love refused, and attempted to walk into his residence. Officer Angle placed Mr. Love under arrest for communicating threats to Ms. Love.

After calming Ms. Love, Officer Phillips used his laptop computer to record the following statement by Ms. Love:

I am LaQuita Love. I understand Officer D.L. Phillips is taking this statement from me, and everything that I have told him is true to the best of my knowledge.

On 8-15-2000 at about 3:00 a.m., I was asleep in bed when my mother called me on the phone and woke me up. After I spoke with my mother, I was trying to go back to sleep when my hus-

band, Gregory Lavon Love, walked into the room and jerked the covers off of me and said [] we need[ed] to talk.

We talked for a few minutes and left the room. I started to fall back to sleep when my husband came back into the room, turned on the lights, jerked the covers off of me and said, "stand up." When I stood up out of the bed, he threw the pillows on the floor and began to put his clothes on. He began yelling at me and cursing very loudly.

As he was getting dressed he would stand very close to me and act like he was going to hit me with his fist, and then would stop right before he would hit me. He did this numerous times and each time I would flinch because I didn't know if he was really going to hit me.

When he saw that I was scared he said, "You see, you don't want me to hit you." After this went on for several minutes, he said to me, "I'm getting ready to leave and I'll be back. And when I get back, if I see you sitting or lying down, I'm going to knock the hell out of you."

He drove away from the house, and as soon as he did I called the police and ran next door to my neighbor's house. I stayed at my neighbor's house until the police officers arrived.

Officer D.L. Phillips read this statement back to me and everything is accurate.

Based on this evidence, the State indicted Mr. Love for communicating threats in violation of N.C. Gen. Stat. § 14-277.1. At trial, the State called Ms. Love to testify. Although Ms. Love could recall calling the police, being upset, and running to her neighbor's house, she stated that she could not recall any events tending to incriminate Mr. Love. Accordingly, the following colloquy transpired between the State and Ms. Love:

Q. Do you recall one of the officers talking to you and reading back what you had said to him?

A. Yes, I do.

Q. And when you gave that statement to the police officers that night, everything was fresh in your mind, wasn't it?

A. Yes, it was.

Q. And you told them what happened at the house that night; right?

A. Yes, I did.

At this point, the State approached Ms. Love with State's Exhibit 1—a computer printout of Ms. Love's statement recorded on a laptop computer by Officer Philips on 15 August 2000. The defense vigorously objected, arguing that "there is no indication . . . that this is [Ms. Love's statement]. There's no hand written note, there's no signature . . . [and, consequently,] there's no indication here that she [is] refreshing her memory from anything that appears to be her statement." After considering the arguments of both parties, the trial court overruled the defendant's objection and the colloquy continued:

Q. Ms. Love, have you taken a look at that statement?

A. Yes, I have.

Q. And does reading that statement that you gave to the officer that night refresh your memory about what you told the officers.

A. My memory is about the same, yes. I mean,—

Q. So you don't remember any better?

A. No, I don't.

Q. But that night when you were talking to the officers about 20 or 30 minutes after this all happened, you remembered everything; correct?

A. Yes.

Thereafter, the State called Officer Phillips. Officer Phillips testified that he took a statement from Ms. Love, and the State asked Officer Phillips to read that statement into evidence pursuant to North Carolina's hearsay exception for "recorded recollections." Again, Mr. Love vigorously objected and argued that the alleged statement of Ms. Love—an unsigned computer printout—did not meet foundational reliability requirements of the aforementioned hearsay exception. The trial court overruled the defendant's objection.

At the close of the State's evidence, the defendant made a motion to dismiss. The trial court denied the defendant's motion. The defendant did not present any evidence. On 23 May 2001, the jury returned a unanimous verdict finding Mr. Love guilty of communicating

threats. The trial court sentenced Mr. Love to forty-five days in the Mecklenburg County Jail, suspended for two years, and placed Mr. Love on supervised probation for twenty-four months. From the judgment, Mr. Love appeals and makes three arguments through five assignments of error.

**[1]** By his first argument, and first and second assignments of error, Mr. Love argues the trial court erred by permitting Officer Phillips to read Ms. Love's statement into evidence because the State failed to lay a proper foundation for admission of the document into evidence under N.C. Gen. Stat. § 8C-1, Rule 803(5). After carefully reviewing the record, we disagree.

North Carolina's Rules of Evidence provide that: "Hearsay is not admissible except as provided by statute or by these rules." N.C. Gen. Stat. § 8C-1, Rule 802. Under N.C. Gen. Stat. § 8C-1, Rule 803(5) the following is not excluded by the hearsay rule:

> Recorded Recollection.—A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

In order to admit "recorded recollection" pursuant to N.C. Gen. Stat. § 8C-1, Rule 803(5), the party offering the recorded recollection must show that the proffered document meets three foundational requirements:

> (1) The document must pertain to matters about which the declarant once had knowledge; (2) The declarant must now have an insufficient recollection as to such matters; (3) The document must be shown to have been made by the declarant or, if made by one other than the declarant, to have been examined [and adopted] . . . when the matters were fresh in [her] memory.

*See e.g., State v. Robar,* 157 Vt. 387, 390, 601 A.2d 1376, 1377-378 (1991).

At trial, the evidence presented established all the elements necessary to lay a proper foundation for the admission of Ms. Love's statement as recorded recollection pursuant to N.C. Gen.

Stat. § 8C-1, Rule 803(5).[1] Ms. Love testified: (1) she remembered making a statement describing the events of that night to an officer, (2) she made the statement when the events of the night were "fresh in her mind," (3) she no longer had sufficient recollection as to the matter; and (4) the statement was read back to her. Moreover, Officer Phillips testified that Ms. Love was given an opportunity to edit the statement, but that Ms. Love declined to edit the statement—thereby adopting it.[2] Accordingly, we hold the trial court did not abuse its discretion by admitting Ms. Love's recorded recollection into evidence and, therefore, the corresponding assignments of error are overruled.

[2] By his second argument, and fourth assignment of error, Mr. Love argues that the trial court erred in denying his motion to dismiss. After carefully reviewing the record, we disagree.

"In ruling on a motion to dismiss for insufficient evidence, the trial court must consider the evidence in the light most favorable to the State, which is entitled to every reasonable inference which can be drawn from that evidence." *State v. Dick*, 126 N.C. App. 312, 317, 485 S.E.2d 88, 91 (1997). "[T]he question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged . . . and (2) of defendant's being the perpetrator of such offense." *State v. Brayboy*, 105 N.C. App. 370, 373-74, 413 S.E.2d 590, 592 (1992). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

---

1. Mr. Love relies on *State v. Nickerson*, 320 N.C. 603, 608, 359 S.E.2d 760, 762-63 (1987), for the proposition that "a signature" is *sine qua non* to a properly laid foundation for recorded recollections. For Mr. Love, the signature in *Nickerson* created "sufficient indicia of reliability." Accordingly, Mr. Love contends, "a generic, printed, unsigned document which is readily susceptible to editing without any way to detect it, [does not contain] that indicia of reliability." Consequently, Mr. Love cautions this Court that a decision upholding the trial court "would be a very dangerous precedent to set."

The basis of Mr. Love's argument has elemental appeal: Without independent indicia of reliability for recorded recollections, the police would be free to produce and attribute incriminating documents and statements to the accused. Where Mr. Love's argument fails, however, is in its assumption that "a signature" is the *sine qua non* to a properly laid foundation. This is not a correct statement of the law. *See e.g., United States v. Payne*, 492 F.2d 449 (4th Cir. 1973). Rather, the test for admissibility is squarely focused on the witness' adoption of the statement, and the statement's reliability. Although a signature is certainly evidence of adoption and reliability, it is neither conclusive nor a necessary precondition.

2. This not a case, as in *State v. Hollingsworth*, 78 N.C. App. 578, 337 S.E.2d 674 (1985), where a witness recanted her recorded recollection during trial and testified that recorded recollection was a lie.

*State v. Williams*, 133 N.C. App. 326, 328, 515 S.E.2d 80, 82 (1999) (citation omitted).

In North Carolina, a defendant is guilty of communicating threats under N.C. Gen. Stat. § 14-277.1 if, without legal authority:

(1) [The defendant] willfully threatens to physically injure the person . . .;

(2) The threat is communicated to the other person, orally, in writing, or by any other means;

(3) The threat is made in a manner and under circumstances which would cause a reasonable person to believe that the threat is likely to be carried out; and

(4) The person threatened believes that the threat will be carried out.

On appeal, Mr. Love argues that the trial court should have granted his motion to dismiss because the State did not produce substantial evidence of the fourth element. This element requires the person threatened to "subjectively believe" that the threat will be carried out. Mr. Love contends Ms. Love did not have this subjective belief, and, in support of this notion, Mr. Love points to Ms. Love's trial testimony that on 15 August 2000: (1) she did not recall Mr. Love threatening her; (2) she was not afraid of Mr. Love; and (3) she was not hiding from Mr. Love when the officers arrived. If this was the only evidence in the record of Ms. Love's subjective beliefs, Mr. Love's argument would have merit.

Mr. Love, however, does not mention Ms. Love's recorded recollection, read into evidence pursuant to N.C. Gen. Stat. § 8C-1, Rule 803(b)(5), where Ms. Love stated:

As he was getting dressed he would stand very close to me and act like he was going to hit me with his fist, and then would stop right before he would hit me. He did this numerous times and each time I would flinch because I didn't know if he was really going to hit me.

When he saw that I was scared he said, "You see, you don't want me to hit you." After this went on for several minutes, he said to me, "I'm getting ready to leave and I'll be back. And when I get back, if I see you sitting or lying down, I'm going to knock the hell out of you."

He drove away from the house, and as soon as he did I called the police and ran next door to my neighbor's house. I stayed at my neighbor's house until the police officers arrived.

This statement contains four pieces of substantial evidence supporting the State's theory that Ms. Love subjectively believed that Mr. Love intended to carry out his threats. Namely, Ms. Love stated: (1) she flinched when Mr. Love swung his fists at her face; (2) she described herself as scared; (3) she called the police; and (4) she ran to her neighbor's house until the police arrived. Moreover, when the police arrived at the scene Ms. Love was shaking and crying. Even after the officers calmed Ms. Love, she instantly starting crying again upon seeing Mr. Love's vehicle approach the scene. In our opinion, this evidence is substantial and adequate to allow a reasonable fact finder to conclude that Ms. Love subjectively believed that Mr. Love was going to carry out his threats. Accordingly, the trial court properly denied Mr. Love's motion to dismiss, and, therefore, the corresponding assignments of error are overruled.

[3] By his third argument, and fifth assignment of error, Mr. Love contends that trial court committed error by extending Mr. Love's probationary period to twenty-four months without making the required specific finding of facts that a longer period of probation was necessary as required by statute. After carefully reviewing the record, we agree.

Pursuant to North Carolina's procedure under the Structured Sentencing Act and N.C. Gen. Stat. § 15A-1343.2(d), the General Assembly has provided trial courts with the following mandate:

Lengths of Probation Terms Under Structured Sentencing.—Unless the court makes specific findings that longer or shorter periods of probation are necessary, the length of the original period of probation for offenders sentenced under Article 81B shall be as follows:

(1) For misdemeanants sentenced to community punishment, not less than six nor more than 18 months;

In the case *sub judice*, the trial court violated this statutory mandate by sentencing Mr. Love to twenty-four months supervised probation without making specific findings of fact that a longer period of probation was necessary. The State argues, however, that Mr. Love did not object to the trial court's sentence, and, therefore, Mr. Love

failed to preserve this issue for appellate review pursuant to N.C. R. App. P. 10(b).

Our Supreme Court, as well as this Court, have consistently held that: "When a trial court acts contrary to a statutory mandate, the error ordinarily is not waived by the defendant's failure to object at trial." *State v. Hucks*, 323 N.C. 574, 579, 374 S.E.2d 240, 244 (1988); *see also State v. Ashe*, 314 N.C. 28, 331 S.E.2d 652 (1985); *State v. Tucker*, 91 N.C. App. 511, 372 S.E.2d 328 (1988). "Accordingly, we vacate this condition of defendant's probation and remand this portion of defendant's case for resentencing. The trial court must reduce defendant's probation to the statutory period of [six to eighteen months] or enter appropriate findings of fact that a longer period of probation is necessary." *State v. Lambert*, 146 N.C. App. 360, 366, 553 S.E.2d 71, 76 (2001).

Affirmed in part, vacated in part, and remanded for resentencing.

Judges BRYANT and GEER concur.