STATE OF NORTH CAROLINA v. JAMES McKINLEY BRANCH

No. COA08-20

(Filed 2 December 2008)

**1. Arrest— traffic stop—further detention without probable cause—attempt to drive away—assault on the officer**

Defendant had the right to use such force as reasonably appeared necessary to prevent an unlawful restraint where an officer attempted to extend a traffic stop beyond the time required to check license and registration without reasonable suspicion, but reacted with more force than was necessary when he accelerated rapidly with the officer hanging from the passenger door. Officers then had probable cause to arrest defendant for assault and to search the vehicle pursuant to that arrest.

**2. Sentencing— 24 months probation—exceeding statutory mandate—no finding as to necessity**

A sentence of 24 months of supervised probation was remanded for resentencing or for entry of findings as to why it was necessary to sentence defendant to a period of probation longer than mandated by N.C.G.S. § 15A-1343.2(d)(1).

Appeal by defendant from order entered 1 October 2007 by Judge Thomas H. Lock in Superior Court, Cumberland County. Heard in the Court of Appeals 18 August 2008.

*Attorney General Roy Cooper, by Special Deputy Attorney General Robert T. Hargett, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Daniel Shatz, for defendant-appellant.*

WYNN, Judge.

Although "every person has the right to resist an unlawful arrest[,]" that right is limited to the use of "such force as reasonably appears to be necessary to prevent the unlawful restraint of his liberty."[1] Because we find that attempting to flee in a motor vehicle while a police officer is holding onto that vehicle constituted unreasonable force to prevent an unlawful restraint of liberty, we affirm the trial court's denial of Defendant's motion to suppress evidence. Regarding the sentence imposed, however, we must remand because the trial court failed to make a finding that it was necessary to sentence Defendant to a period longer than that mandated by statute.

On 6 September 2006, Officer Phillip Young of the Fayetteville Police Department was patrolling a high-crime area in Fayetteville when he observed a blue Hyundai Excel, with the driver inside, parked in front of a residence he knew to be involved in drug activity. Officer Young passed by the vehicle without stopping and turned onto another street; a few minutes later, he saw the vehicle travel past him back on the same road where the house was located. At that point, Officer Young observed that the vehicle was occupied by two black males and that it had a thirty-day temporary registration license plate. Because he was unable to read the expiration date on the temporary tags, Officer Young initiated a traffic stop of the vehicle.

After approaching the vehicle, Officer Young asked Defendant, who was the driver, for his license and registration. Officer Young testified that he believed Defendant was "overly nervous" for a regular traffic stop, and that he could "visibly see [Defendant's] chest rising and falling from his breathing," as well as his hands shaking. Because he "believed there might be narcotics on [Defendant]" or the passenger in the vehicle, Officer Young called for another officer, David West, to meet him at the scene. The check of Defendant's license and registration showed that everything was in order, and Officer Young returned the documents to Defendant. Officer Young then asked Defendant if he had anything illegal in the car, and Defendant re-

---

1. *State v. Mobley*, 240 N.C. 476, 478-79, 83 S.E.2d 100, 102 (1954) (citations omitted).

sponded that he did not. Officer Young requested Defendant's consent to search the vehicle; when Defendant refused, Officer Young replied he would call for a canine unit, which would take approximately ten minutes, and walked back to his own vehicle.

When Officer Young came back to Defendant's vehicle to return his license and registration, Officer West positioned himself on the passenger side of the vehicle to "watch the defendant and passenger's hands to make sure they weren't going for any weapons or trying to conceal any narcotics." He remained there as Officer Young returned to his vehicle to call for a canine unit. With the engine of Defendant's car still running, Officer West "observed the defendant reach over the gear shift to place it in drive." Officer West ordered him not to do so, but Defendant continued, and Officer West reached inside the car to try to get the ignition key. According to Officer West, Defendant's response was to "hit the accelerator and [Officer West] had no choice but to grab the vehicle door or get [his] armed [sic] ripped off."

Officer West recounted that the car "started accelerating rapidly so . . . [he] clamped the door and ordered [Defendant] to stop." Defendant refused, and Officer West drew his weapon and again ordered him to stop or he would fire. However, Officer West felt that he could not safely discharge his weapon without risking that Defendant would lose control of the vehicle. Moreover, Officer West testified that he "couldn't let go. Defendant was going too fast. I would have got [sic] injured." After traveling approximately 758 feet, Defendant brought the vehicle to a stop and opened the door. Officer West jumped on the hood, and Officer Young, who was previously at his vehicle, returned to the scene; the two officers took Defendant to the ground and arrested him. Officer West sustained no serious injuries requiring medical attention, but his boots and pants were damaged. He estimated that about thirty seconds had passed from the time he reached in to grab the keys to the time when Defendant stopped the vehicle. A search of the vehicle following Defendant's arrest uncovered twelve individual bags of what was later determined to be marijuana and $220 in cash.

Following the conclusion of the *voir dire* testimony on Defendant's motion to suppress the evidence found in his car, the trial court found that the officers "had no lawful authority to try to detain the vehicle and the defendant at the scene," as they lacked sufficient evidence "to create a reasonable and articulable suspicion" that Defendant was engaged in criminal activity after finding that

Defendant's license and registration were in order. Nevertheless, although the trial court noted that Defendant had the right to "use reasonable force to resist an unlawful detention," the trial court also found that "a reasonable person should have known [that] accelerating rapidly while the officer was reaching inside your vehicle would jeopardize the officer's safety and indeed his life." Accordingly, the trial court concluded that Defendant had "reacted with more force than was reasonably permitted to resist the unlawful detention by the officers." As such, the officers had probable cause to arrest Defendant for assault, and the subsequent search of his vehicle was lawful pursuant to that arrest. The trial court denied Defendant's motion to suppress, and Defendant then pled guilty to possession of marijuana and assault on a government officer; he received a suspended sentence of forty-five days in prison on the former charge and seventy-five days on the latter charge, to be served consecutively, with twenty-four months of supervised probation.

Defendant now appeals the denial of his motion to suppress, arguing that (I) he did not use excessive force to resist his unlawful detention, and (II) the trial court erred by failing to find that a longer period of probation than that provided for by statute was necessary, entitling him to a new sentencing hearing.

I.

[1] Defendant first argues that his motion to suppress should have been granted, as he used reasonable force to resist his unlawful detention, namely, the portion of the traffic stop beyond the time necessary to determine that his temporary license tags were valid. We disagree.

Our standard of review to determine whether a trial court properly denied a motion to suppress is "whether the trial court's findings of fact are supported by the evidence and whether the findings of fact support the conclusions of law." *State v. Cockerham*, 155 N.C. App. 729, 736, 574 S.E.2d 694, 699 (citing *State v. Wynne*, 329 N.C. 507, 522, 406 S.E.2d 812, 820 (1991)), *disc. review denied*, 357 N.C. 166, 580 S.E.2d 702 (2003). The trial court's findings of fact "are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001) (internal quotation marks and citations omitted). The conclusions of law, however, are reviewed *de novo* by this Court. *State v. Brooks*, 337 N.C. 132, 141, 446 S.E.2d 579, 585 (1994).

Our Supreme Court has long held:

It is axiomatic that every person has the right to resist an unlaw-ful arrest. In such case the person attempting the arrest stands in the position of a wrongdoer and may be resisted by the use of force, as in self-defense. True the right of a person to use force in resisting an illegal arrest is not unlimited. He may use only such force as reasonably appears to be necessary to prevent the unlawful restraint of his liberty. And where excessive force is exerted, the person seeking to avoid arrest may be convicted of assault, or even of homicide if death ensues. . . .

*State v. Mobley*, 240 N.C. 476, 478-79, 83 S.E.2d 100, 102 (1954) (cita-tions omitted). In applying this rule of law, this Court has engaged in the following analytical framework:

Since the initial arrest . . . [was] illegal, plaintiff was entitled to use a reasonable amount of force to resist. Under this analysis, if the amount of force used by plaintiff was unreasonable . . ., then the officers had probable cause to arrest him under G.S. § 14-33(b)(8) [the statute criminalizing an assault on a law enforcement or government officer]. However, [the officers] did not have probable cause to arrest plaintiff for assault on an offi-cer if, at the time, plaintiff was using a reasonable amount of force to resist the illegal arrests. . . . Furthermore, if the amount of force used by plaintiff was reasonable, he had a clearly estab-lished right, as a matter of law, not to be arrested for a violation of G.S. § 14-33(b)(8).

*Roberts v. Swain*, 126 N.C. App. 712, 725-26, 487 S.E.2d 760, 769, *disc. review denied*, 347 N.C. 270, 493 S.E.2d 746 (1997) (citation omitted). Moreover, the General Assembly has also provided that an individual "is not justified in using a deadly weapon or deadly force to resist an arrest by a law-enforcement officer using reasonable force," when the individual knows that it is a true law enforcement officer who is attempting to make the arrest. N.C. Gen. Stat. § 15A-401(f)(1) (2005).[2]

---

2. We recognize the majority trend "toward abrogation of the common law right to use reasonable force to resist an unlawful arrest." *Commonwealth v. Hill*, 570 S.E.2d 805, 809 n.2 (Va. 2002); *see also* Andrew P. Wright, *Resisting Unlawful Arrest: Inviting Anarchy or Protecting Individual Freedom?*, 46 Drake L. Rev. 383, 388 n.49 (1997) (noting that, as of 1997, thirty-six states had abolished the common law right to resist an unlawful arrest either by judicial decision [16 states] or statutory fiat [20 states]). However, this Court is bound by the precedent set in *Mobley*, and only our Supreme Court or the General Assembly can take steps towards abrogation of the common law rule in North Carolina.

In the instant case, as found by the trial court, the authority of Officer Young's traffic stop of Defendant's vehicle was limited to the "articulated facts and reasonable suspicion concerning the 30 day tag," namely, that the expiration date was not clearly visible. We agree with the trial court that Officer Young's detention of Defendant beyond the time it took to check his license and registration was unlawful, as Officer Young lacked reasonable suspicion to justify the detention until the arrival of a canine unit. As such, Defendant did have the right to use "such force as reasonably appear[ed] to be necessary to prevent the unlawful restraint of his liberty." *Mobley*, 240 N.C. at 479, 83 S.E.2d at 102 (citation omitted).

Nevertheless, we affirm the trial court's conclusion that, by "accelerating rapidly while the officer was reaching inside [the] vehicle," Defendant "reacted with more force than was reasonably permitted to resist the unlawful detention by the officers." Indeed, the trial court's findings of fact as to Defendant's "accelerating rapidly with Officer [] West hanging out of the passenger side door" are supported by competent evidence and, in turn, support the trial court's conclusion that Defendant acted with unreasonable force to resist the unlawful detention. Further, the trial court correctly concluded that the officers had probable cause to arrest Defendant for assault and to search his vehicle pursuant to that arrest. *See Roberts*, 126 N.C. App. at 725, 487 S.E.2d at 769. Accordingly, we affirm the trial court's denial of Defendant's motion to dismiss.

II.

**[2]** Defendant also challenges his sentence to twenty-four months of supervised probation, arguing that the trial court failed to make a finding that it was necessary to sentence him to a period longer than that mandated by statute for his offense. *See* N.C. Gen. Stat. § 15A-1343.2(d)(1) (2007) (providing that unless a sentencing court finds that a longer period of probation is necessary, a defendant who is sentenced to community punishment for a misdemeanor shall be placed on probation for no less than six months and no more than eighteen months); *see also State v. Love*, 156 N.C. App. 309, 317-18, 576 S.E.2d 709, 714 (2003) (remanding for resentencing when the trial court exceeded the statutory amounts outlined in N.C. Gen. Stat. § 15A-1343.2(d)(1) without making the necessary findings, despite the defendant's failure to object at sentencing). We agree.

As in *Love*, the trial court here made no findings as to why the probationary period imposed was in excess of the statutory frame-

work laid out in section 15A-1343.2(d)(1). The State concedes that the facts of this case cannot be distinguished from those in *Love*. Accordingly, we remand Defendant's case to the trial court for resentencing or for entry of findings of fact as to why a longer probationary period is necessary.

Remanded for resentencing.

Chief Judge MARTIN and Judge HUNTER concur.