BERGER, Judge.
 

 *322
 
 Jerome Harris ("Defendant") appeals from judgment entered following his conviction for second degree murder and possession of a firearm by a convicted felon. Defendant contends the trial court erred (1) by allowing the State to introduce a video of a witness' interview by law enforcement into evidence, both substantively and corroboratively, and to play the video for the jury; and (2) by giving supplemental
 
 *323
 
 jury instructions urging the jurors to continue their deliberations when it was communicated to the trial court that they were unable to agree upon a verdict.
 

 After review, we disagree with Defendant on his first assignment of error and hold that the trial court did not commit error in allowing the State's video interview evidence to be played for the jury, first as a 'past recorded recollection' exception to hearsay, and second as corroborative evidence substantiating their witness' testimony. We agree with Defendant on his second assignment of error that the trial court erred by giving some, but not all, of the supplemental jury instructions required by statute if it appears to the judge that the jury has been unable to agree upon a verdict. However, because this was unpreserved error and the trial court's instructions did not coerce the jury into reaching its verdict, it did not rise to the level of plain error. For these reasons, Defendant received a fair trial free from prejudicial error.
 

 Factual Background
 

 The State presented evidence at trial that tended to show the following chain of events led to the death of Corey Jackson ("Jackson"). Donivan Bridges ("Bridges"), a close friend of Defendant for approximately 12 years, testified that he, Jackson, and Defendant were at a cookout together on April 20, 2014. At the cookout, Jackson and Defendant began to argue when Jackson told Defendant, "We used to take your drugs and we used to beat you up whenever you was on the streets." Jackson's comment was made in the presence of Defendant's girlfriend, Africa Ledbetter ("Ledbetter"), and their children. After this verbal exchange, Defendant expressed anger to Bridges at this insult and his intent to shoot Jackson that day. Defendant also asked Bridges about acquiring a gun. Defendant did not know where his gun was located because Ledbetter had hidden it from him.
 

 Tyshia Wilson ("Wilson") testified that on April 21, 2014, she noticed that Jackson seemed agitated and anxious when she saw him at the home of Cora Bost ("Bost"), Wilson's mother. When Wilson asked Jackson why he was anxious, he said that he was in the middle of a confrontation with Defendant and wanted it resolved that day. Jackson let Wilson know about the confrontation so that he "wouldn't get jumped," and also said that he wanted to fight Defendant in the parking lot their adjacent apartments shared.
 

 Once Jackson, Wilson, and others left Bost's home and returned to Defendant and Jackson's apartment complex, Defendant was found pacing outside as he talked on his telephone. Jackson challenged
 
 *324
 
 Defendant to a fight, but Defendant said he did not have time to fight. Bost testified that Jackson, in reference to a previous domestic incident between Defendant and Ledbetter in which police were called, said to Defendant, "You must be still mad because you think my girl called the cops on you when you was beating [Ledbetter]."
 

 Defendant continued his telephone conversation and requested the person to whom he was speaking to bring him a gun. Jackson continued to call Defendant inflammatory names as he challenged him to fight, but Defendant continued to decline Jackson's invitation. Later that day, Jackson informed his wife, Tyaisha Smalley ("Smalley"), about
 
 *679
 
 his confrontation with Defendant and how Defendant had accused Jackson of trying to "holler at" Ledbetter. Jackson denied having ever pursued any kind of relationship with Ledbetter.
 

 Several days passed, and on April 24, 2014, Smalley and her son Christian returned to the apartment they shared with Jackson. Jackson had previously sent Smalley a text message at approximately 2:40 p.m. saying that he was at their apartment cleaning. When Smalley and Christian arrived, Smalley paused briefly outside to speak with Ledbetter's parents who were sitting on Defendant and Ledbetter's front porch. Christian entered the apartment first, and came back outside to tell Smalley that Jackson was lying on the floor of their living room, face down and unresponsive. Ledbetter's stepfather called for police and an ambulance.
 

 As part of law enforcement's initial investigation, Raleigh Police Detective Brian Neighbors ("Detective Neighbors") interviewed Ledbetter's 13-year-old son, Xavier Gibbes ("Gibbes"), on that same day, April 24. Gibbes informed Detective Neighbors during this interview that he had heard a gunshot at approximately 2:45 to 3:00 p.m. earlier that day in the vicinity of Jackson's apartment, and several seconds later had observed Defendant walking away from the apartment with a jacket in his hand.
 

 When Bridges returned to his apartment on April 24 and saw the ongoing investigation at Jackson's apartment, he called Defendant because of the conversation he and Defendant had the previous day. During this conversation, Defendant asked whether the police were looking for him, and admitted that "he [had] shot [Jackson] and thought he hit him at least once". Bridges was interviewed by Raleigh Police Detective Eric Emser ("Detective Emser") on April 24, and he conveyed the content of his conversation with Defendant to Detective Emser.
 

 *325
 
 Dr. Lauren Scott ("Dr. Scott") of the Office of the Chief Medical Examiner performed an autopsy of Jackson on April 25, 2014. Dr. Scott testified about the autopsy, finding that Jackson had suffered four gunshot wounds. Two of these gunshot wounds entered Jackson's back and were determined to be fatal.
 

 Defendant was arrested on the morning of April 25, 2014. Following his arrest, Defendant was interviewed by Raleigh Police Detective Zeke Morse ("Detective Morse"). During the interview, Defendant informed Detective Morse where he would be able to find the weapon with which he had shot Jackson.
 

 At trial, Defendant freely, voluntarily, and understandingly elected to remain silent and not present any evidence on his own behalf, after consultation with his counsel.
 

 Procedural Background
 

 Defendant was indicted by a Wake County Grand Jury on June 2, 2014, for possession of a firearm by a convicted felon in violation of
 
 N.C. Gen. Stat. § 14-415.1
 
 , and first degree murder in violation of
 
 N.C. Gen. Stat. § 14-17
 
 . These charges were joined for trial as they arose from the same acts of Defendant. Defendant was tried before a jury beginning on December 7, 2015, in Wake County Superior Court, the Honorable Michael R. Morgan presiding. The jury returned verdicts finding Defendant guilty of possession of a firearm by a convicted felon, for which Defendant was sentenced to a term of 17 to 30 months, and guilty of second degree murder, for which he was sentenced to a term of imprisonment of 328 to 406 months; the sentence terms to run consecutively. Defendant gave oral notice of appeal.
 

 Analysis
 

 Defendant has two assignments of error asserted in this appeal. His first assignment contests the introduction of a video interview conducted by Detective Neighbors of Gibbes into the State's evidence, and allowing said interview to be played twice for the jury. His second assignment of error, albeit unpreserved at trial, challenges supplemental jury instructions given by the trial court when the jury communicated that it was unable to reach a verdict after three hours of deliberation. We take each in turn.
 

 I.
 
 Video Recording of Witness' Interview
 

 By his first assignment of error, Defendant contends that the trial court erred by allowing the State to twice play for the jury a video
 
 *326
 
 recording of its witness being interviewed
 
 *680
 
 by law enforcement. Defendant argues that it was error for the trial court to allow the video interview to be introduced as evidence both substantively, and thereafter corroboratively. In other words, it should have failed substantively, and therefore failed corroboratively. We disagree.
 

 Initially, we must note that "[e]vidence of an out-of-court statement of a witness, related by the in-court testimony of another witness, may be offered as substantive evidence
 
 [1]
 
 or offered for the limited purpose of corroborating the credibility of the witness making the out-of-court statement.
 
 [2]
 
 "
 
 State v. Ford
 
 ,
 
 136 N.C.App. 634
 
 , 640,
 
 525 S.E.2d 218
 
 , 222 (2000) (footnotes in original). "Although the better practice calls for the party offering the evidence to specify the purpose for which the evidence is offered, unless challenged there is no requirement that the purpose be specified."
 

 Id.
 

 "If the offering party does not designate the purpose for which the evidence is offered, the evidence is admissible if it qualifies either as corroborative evidence or competent substantive evidence."
 
 Id
 
 . (citing
 
 State v. Goodson
 
 ,
 
 273 N.C. 128
 
 , 129,
 
 159 S.E.2d 310
 
 , 311 (1968) ;
 
 State v. Chandler
 
 ,
 
 324 N.C. 172
 
 , 182,
 
 376 S.E.2d 728
 
 , 735 (1989) ).
 

 A.
 
 Introduction of Recording as Hearsay Exception
 

 Defendant first argues that the trial court erred in allowing the video interview to be introduced as substantive evidence and played for the jury when the State's witness, Gibbes, was unable to recall any of the statements he made to Detective Neighbors soon after Defendant had shot and killed Jackson. Defendant argues that the State introduced the video interview pursuant to Rule 612 of the North Carolina Rules of Evidence as a 'present recollection refreshed', and in allowing it to do so, the trial court erred. However, in light of the testimony of Gibbes, the arguments of counsel, and the ruling of the trial court, the evidence was properly introduced pursuant to Rule 803(5) as a hearsay statement that fits within an exception to exclusion. Therefore, as shown below, the trial court did not err, and this portion of this alleged error is overruled.
 

 At the time evidence is admitted, exceptions to the admission must generally be preserved by counsel with an objection.
 

 *327
 
 N.C. Gen. Stat. § 8C-1, Rule 103 ; N.C.R. App. P. 10(a)(1). "In order to preserve a question for appellate review, a party must have presented the trial court with a timely request, objection or motion, stating the specific grounds for the ruling sought if the specific grounds are not apparent."
 
 State
 

 v. Eason
 
 ,
 
 328 N.C. 409
 
 , 420,
 
 402 S.E.2d 809
 
 , 814 (1991) (citing N.C.R. App. P. 10(b)(1) ).
 

 The specific grounds for objection raised before the trial court must be the theory argued on appeal because "the law does not permit parties to swap horses between courts in order to get a better mount in the [appellate court]."
 
 Weil v. Herring
 
 ,
 
 207 N.C. 6
 
 , 10,
 
 175 S.E. 836
 
 , 838 (1934). Furthermore, when counsel objects to the admission of evidence on only one ground, he or she fails to preserve the additional grounds for appeal, unless plain error is specifically and distinctly argued on appeal.
 
 State v. Frye
 
 ,
 
 341 N.C. 470
 
 , 496,
 
 461 S.E.2d 664
 
 , 677 (1995) (citing N.C.R. App. P. 10(c)(4) ). For this issue, Defendant has not argued plain error. Therefore, we only address the grounds under which the contested admission of evidence was objected, as any other grounds have been waived.
 

 The admission of evidence alleged to be hearsay is reviewed
 
 de novo
 
 when preserved by an objection.
 
 State v. Wilson
 
 ,
 
 197 N.C.App. 154
 
 , 159,
 
 676 S.E.2d 512
 
 , 515 (2009). Unless there is an evidentiary rule to the contrary, assignment of error to the admission of evidence is waived on appeal if no objection is raised to the trial court.
 
 State v. Johnson
 
 ,
 
 209 N.C.App. 682
 
 , 692,
 
 706 S.E.2d 790
 
 , 797 (2011). Furthermore, unless a defendant proves that a different result would
 
 *681
 
 have been reached at trial absent the error, evidentiary errors are harmless.
 
 State v. Ferguson
 
 ,
 
 145 N.C.App. 302
 
 , 307,
 
 549 S.E.2d 889
 
 , 893,
 
 disc. review denied
 
 ,
 
 354 N.C. 223
 
 ,
 
 554 S.E.2d 650
 
 (2001) (citing
 
 State v. Campbell
 
 ,
 
 133 N.C.App. 531
 
 , 540,
 
 515 S.E.2d 732
 
 , 738 (1999) ).
 

 Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801 (2015). Hearsay may not be admitted into evidence, "except as provided by statute or by [the evidentiary] rules." N.C. Gen. Stat. § 8C-1, Rule 802 (2015). These evidentiary rules provide exceptions for certain hearsay evidence to not be excluded if the statement fits in certain categories. N.C. Gen. Stat. § 8C-1, Rule 803 (2015). One such statement that will not be excluded by the hearsay rule is "[a] memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly." N.C. Gen. Stat. § 8C-1, Rule 803(5). This is considered a 'past recollection recorded', and,
 
 *328
 
 "[i]f admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party."
 

 Id.
 

 In the case
 
 sub judice
 
 , Defendant argues that the trial court permitted the jury to hear the recording of Gibbes' interview by Detective Neighbors under Rule 612(a) of the North Carolina Rules of Evidence. Defendant further argues that the trial court erred by allowing the State to play this recording, because under Rule 612 Defendant must be the party choosing whether or not the recording will be played for the jury.
 

 Rule 612 provides for the use of a writing or object to be used to refresh the witness' memory. N.C. Gen. Stat. § 8C-1, Rule 612 (2015). This 'present recollection refreshed' writing or object may be used by the witness to refresh his memory, but the "adverse party is entitled to have the writing or object produced at the trial, hearing, or deposition in which the witness is testifying".
 

 Id.
 

 Furthermore, this adverse party is "entitled to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness".
 

 Id.
 

 However, it was neither explicitly stated whether the State was seeking to introduce the video into evidence as a hearsay exception pursuant to Rule 803(5) or as a 'present recollection refreshed' pursuant to Rule 612, nor was it stated that the trial court was allowing the video's introduction into evidence pursuant to either of these two rules. Therefore, we must distinguish between a writing that is offered as a 'past recollection recorded' and one that is offered as a 'present recollection refreshed' because the admissibility requirements are critically different.
 

 "Before a past recollection recorded can be read into evidence, certain foundational requirements must be met."
 
 State v. Harrison
 
 ,
 
 218 N.C.App. 546
 
 , 551-52,
 
 721 S.E.2d 371
 
 , 376 (2012). This Court, in
 
 State v. Love
 
 ,
 
 156 N.C.App. 309
 
 ,
 
 576 S.E.2d 709
 
 (2003), explained that
 

 [i]n order to admit 'recorded recollection' pursuant to N.C. Gen. Stat. § 8C-1, Rule 803(5), the party offering the recorded recollection must show that the proffered [evidence] meets three foundational requirements: (1) The [evidence] must pertain to matters about which the declarant once had knowledge; (2) The declarant must now have an insufficient recollection as to such matters; (3) The [evidence] must be shown to have been made by the declarant or, if made by one other than the declarant,
 
 *329
 
 to have been examined and adopted ... when the matters were fresh in [his or her] memory.
 

 Id
 
 .,
 
 156 N.C.App. at 314
 
 ,
 
 576 S.E.2d at 712
 
 (brackets omitted).
 

 In contrast,
 

 [u]nder present recollection refreshed the witness' memory is refreshed or jogged through the employment of a writing, diagram, smell or even touch, and he testifies from his memory so refreshed. Because of the independent origin of the testimony actually elicited, the stimulation of an actual present recollection
 
 *682
 
 is not strictly bounded by fixed rules but, rather, is approached on a case-by-case basis looking to the peculiar facts and circumstances present.
 

 [
 
 State v. Gibson
 
 ,
 
 333 N.C. 29
 
 , 50,
 
 424 S.E.2d 95
 
 , 107 (1992)
 
 overruled on other grounds by
 

 State v. Lynch
 
 ,
 
 334 N.C. 402
 
 ,
 
 432 S.E.2d 349
 
 (1993) ]. Because "the evidence is the testimony of the witness at trial, whereas with a past recollection recorded the evidence is the writing itself," "the foundational questions raised by past recollection recorded are never reached."
 
 Id
 
 . The relevant test, then, "is whether the witness has an independent recollection of the event and is merely using the memorandum to refresh details or whether the witness is using the memorandum as a testimonial crutch for something beyond his recall."
 
 State v. York
 
 ,
 
 347 N.C. 79
 
 , 89,
 
 489 S.E.2d 380
 
 , 386 (1997).
 

 Harrison
 
 , at 552,
 
 721 S.E.2d at 376
 
 .
 

 The testimony of Gibbes leading up to the introduction of the video evidence to the jury showed that this evidence was necessary "as a testimonial crutch for something beyond his recall."
 
 See
 

 York
 
 , at 89,
 
 489 S.E.2d at 386
 
 . During direct examination of Gibbes by the State, the following pertinent exchanges illustrated Gibbes' lack of recall:
 

 [The State]: All right. Now, what was the detective talking to you about?
 

 [Gibbes]: I don't remember.
 

 [The State]: You don't remember?
 

 [Gibbes]: Huh-uh. I really don't...
 

 *330
 
 And:
 

 [The State]: Do you recall telling the detective that?
 

 [Gibbes]: No.
 

 And:
 

 [The State]: Okay. You don't recall this detective that's depicted with you looking at this piece of paper in State's Exhibit 99, this being the sketch and you indicating where you were when you heard the gunshot and two or three seconds later, you see [Defendant] walking away carrying a jacket?
 

 [Gibbes]: No, I really don't.
 

 [The State]: Okay. Did you tell the detective that?
 

 [Gibbes]: No.
 

 [The State]: Tell us everything-how long did you stay at the Raleigh Police Department?
 

 [Gibbes]: I really don't know. That was a year ago. You can't expect me to recall that.
 

 Following these exchanges, the State asked Gibbes whether viewing the video interview with Detective Neighbors would be helpful. Gibbes responded, "I mean, whatever floats your boat." Then, when Defendant was asked by the trial court whether or not he objected to the introduction of the video evidence to the jury, Defendant's counsel initially had no objection, but then changed his mind and entered an objection.
 

 The objection lodged by Defendant before the introduction of the contested evidence is consistent with an objection to the introduction of 'past recollection recorded' evidence, particularly the second foundational requirement enunciated in
 
 Love
 
 : "[t]he declarant must now have an insufficient recollection as to such matters..."
 
 Love
 
 ,
 
 156 N.C.App. at 314
 
 ,
 
 576 S.E.2d at 712
 
 . Defendant's counsel objected "because of the testimony of the witness saying he did not remember." The trial court responded in overruling Defendant's objection that "[t]he aspect of his saying he did not remember is a demonstration of his recollection being exhausted", i.e., insufficient recollection as to such matters.
 

 As the pertinent parts of the testimony above show, Gibbes had insufficient recollection as to the information he had conveyed to
 
 *331
 
 Detective Neighbors when those matters were fresh in his memory. Had Defendant's counsel objected to the introduction of the evidence generally, or objected to any other foundational issues specifically, those objections could be reviewed by this Court. However, Defendant has failed to preserve other grounds for review and he is not permitted "to swap horses between courts."
 
 Weil
 
 , at 10,
 
 175 S.E. at 838
 
 . Therefore, based upon Defendant's counsel's objection, and the concomitant scope of review permitted within this Court, we must conclude that the trial court did not err in allowing the video of this interview to be played for the jury during
 
 *683
 
 Gibbes' testimony as 'past recollection recorded' substantive evidence.
 

 B.
 
 Introduction of Recording as Corroborative Evidence
 

 Defendant next argues, within this same issue, that the introduction of the same video interview as corroborative evidence during the testimony of Detective Neighbors was allowed in error. Defendant argues this was error because, if the video was improperly introduced during Gibbes' testimony as substantive evidence, it should not have been introduced during Detective Neighbors' testimony as corroborative evidence. As shown above, the introduction of the video as substantive evidence was not error; therefore, Defendant's argument fails to show why it could not have been introduced as corroborative evidence at a later point in the trial.
 

 Furthermore, and most dispositive, Defendant did not object to the second introduction of this evidence under any issues pertaining to corroboration. Defendant's counsel, in giving his grounds for objection, stated, "Judge, I'm going to object to reshowing this, especially when the State's witness who is being interviewed [in the video] is not here that that [
 
 sic
 
 ] we can call and cross-examine about what happened." As stated above, and emphasized here, the specific grounds for objection raised before the trial court must be the theory argued on appeal because "the law does not permit parties to swap horses between courts in order to get a better mount in the [appellate court]."
 
 Weil
 
 , at 10,
 
 175 S.E. at 838
 
 . Furthermore, when counsel objects to the admission of evidence on only one ground, he or she fails to preserve the additional grounds for appeal, unless plain error is specifically and distinctly argued on appeal.
 
 Frye
 
 , at 496,
 
 461 S.E.2d at
 
 677 (citing N.C.R. App. P. 10(c)(4) ). Again, as in the first part of this issue, plain error has not been argued.
 

 At trial, the State questioned Detective Neighbors extensively about the interview recorded in the video, specifically detailing the Detective's many questions asked and Gibbes' responses given, along with the
 
 *332
 
 circumstances surrounding the interview. When viewing the introduction into evidence of the video interview, especially in the context of Detective Neighbors' testimony, the video interview was played for the jury to corroborate Detective Neighbors' prior testimony about the interview, not to corroborate any of Gibbes' previous testimony.
 

 Corroboration is the process of persuading the trier of the facts that a witness is credible. We have defined "corroborate" as "to strengthen; to add weight or credibility to a thing by additional and confirming acts or evidence." Prior consistent statements of a witness are admissible as corroborative evidence even when the witness has not been impeached. However, the prior statement must in fact corroborate the witness' testimony.
 

 In order to be corroborative and therefore properly admissible, the prior statement of the witness need not merely relate to specific facts brought out in the witness's testimony at trial, so long as the prior statement in fact tends to add weight or credibility to such testimony. Our prior statements are disapproved to the extent that they indicate that additional or "new" information, contained in the witness's prior statement but not referred to in his trial testimony, may never be admitted as corroborative evidence. However, the witness's prior statements as to facts not referred to in his trial testimony and not tending to add weight or credibility to it are not admissible as corroborative evidence. Additionally, the witness's prior contradictory statements may not be admitted under the guise of corroborating his testimony.
 

 State v. Locklear
 
 ,
 
 172 N.C.App. 249
 
 , 256,
 
 616 S.E.2d 334
 
 , 339 (2005) (quoting
 
 State v. Ramey
 
 ,
 
 318 N.C. 457
 
 , 468-69,
 
 349 S.E.2d 566
 
 , 573-74 (1986) (internal citations and quotations omitted)) (emphasis removed).
 

 Detective Neighbors testified in elaborate detail about his interview with Gibbes. The State methodically questioned Detective Neighbors about his interviewee, Gibbes, as well as the responses Gibbes gave surrounding the death of his neighbor. Detective Neighbors testified to the detailed chronological order of Gibbes' explanation of what he had witnessed. Thereafter, the State requested that the video interview be played for the jury to corroborate Detective Neighbors' testimony
 
 *684
 
 about the interview. There may or may not have been inconsistencies between Detective Neighbors' testimony and the video interview, and there may
 
 *333
 
 or may not have been facts mentioned in one but not the other, but these were for the jury to consider and weigh.
 
 See
 

 Id
 
 . The statements made in the video interview were admissible as corroborative evidence.
 
 See
 

 State v. Higginbottom
 
 ,
 
 312 N.C. 760
 
 , 768,
 
 324 S.E.2d 834
 
 , 840 (1985),
 
 superseded by statute on other grounds as stated in
 

 State v. Green
 
 ,
 
 348 N.C. 588
 
 ,
 
 502 S.E.2d 819
 
 (1998) ("It is not necessary that evidence prove the precise facts brought out in a witness's testimony before that evidence may be deemed corroborative of such testimony and properly admissible."
 
 citing
 

 State v. Burns
 
 ,
 
 307 N.C. 224
 
 ,
 
 297 S.E.2d 384
 
 (1982) ).
 

 "The jury could not be allowed to consider this evidence for any other purpose [but corroboration], however, and whether it in fact corroborated the [Detective]'s testimony was, of course, a jury question."
 
 Locklear
 
 , at 257,
 
 616 S.E.2d at 340
 
 (citation and quotation marks omitted). The trial court did not err in allowing the video interview be played for the jury for the purpose of corroborating Detective Neighbors' testimony, and, therefore, this portion of Defendant's assignment of error is overruled.
 

 II.
 
 Supplemental Jury Instruction
 

 Next we address Defendant's argument that a new trial is required because he was deprived of his fundamental right to a properly instructed jury. We disagree with his contention that the supplemental jury instruction, given by the trial court in response to the jury's communication that it was "stuck" during its deliberation, had a probable impact on the jury's verdict or improperly coerced the jury to reach a verdict. Therefore, this alleged error was not prejudicial and we decline to grant Defendant a new trial.
 

 Defendant did not object at trial to the instructions assigned as error. "Therefore, our review as to these instructions is limited to a review for plain error."
 
 State v. Evans
 
 ,
 
 346 N.C. 221
 
 , 225,
 
 485 S.E.2d 271
 
 , 273 (1997) (citing
 
 State v. Odom
 
 ,
 
 307 N.C. 655
 
 ,
 
 300 S.E.2d 375
 
 (1983) ).
 

 Our Supreme Court reaffirmed their holding in
 
 State v. Odom
 
 , and further clarified how the plain error standard of review applies on appeal to unpreserved instructional error, in
 
 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 ,
 
 723 S.E.2d 326
 
 (2012) :
 

 For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial.
 
 See
 

 Odom
 
 , 307 N.C. at 660,
 
 300 S.E.2d at 378
 
 . To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record,
 
 *334
 
 the error "had a probable impact on the jury's finding that the defendant was guilty."
 
 See
 

 id
 
 . (citations and quotation marks omitted);
 
 see also
 
 [
 
 State v. Walker
 
 ,
 
 316 N.C. 33
 
 , 39,
 
 340 S.E.2d 80
 
 , 83 (1986) ] (stating "that absent the error the jury probably would have reached a different verdict" and concluding that although the evidentiary error affected a fundamental right, viewed in light of the entire record, the error was not plain error). Moreover, because plain error is to be "applied cautiously and only in the exceptional case,"
 
 Odom
 
 , 307 N.C. at 660,
 
 300 S.E.2d at 378
 
 , the error will often be one that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings,"
 
 Odom
 
 , 307 N.C. at 660,
 
 300 S.E.2d at 378
 
 (quoting [
 
 U.S. v. McCaskill
 
 ,
 
 676 F.2d 995
 
 , 1002 (4th Cir. 1982) ] ).
 

 Lawrence
 
 , at 518,
 
 723 S.E.2d at 334
 
 . "[E]ven when the 'plain error' rule is applied, '[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.' "
 
 Odom,
 
 at 660-61,
 
 300 S.E.2d at
 
 378 (citing
 
 Henderson v. Kibbe
 
 ,
 
 431 U.S. 145
 
 , 154,
 
 97 S.Ct. 1730
 
 ,
 
 52 L.Ed.2d 203
 
 (1977) ).
 

 After approximately three hours of deliberations, the trial court received a note from the jury indicating that "they ha[d] a split of 11 to 1." Neither the State, nor Defendant, objected to the trial court's "inclination to give them what is colloquially known as the dynamite charge, which would have them to be urged to do what they can to arrive at a unanimous verdict."
 

 Once the jury was present in the courtroom, the trial court stated:
 

 By virtue of your most recent note that's been passed to me, your foreperson informs
 
 *685
 
 me that you have so far been unable to agree upon a verdict. The Court wants to emphasize the fact that it is your duty to do whatever you can to reach a verdict. You should reason the matter over together as reasonable men and women and to reconcile your differences, if you can, without the surrender of conscientious convictions. But no juror should surrender his or her honest conviction as to the weight or effect of the evidence solely because of the opinion of his or her fellow jurors, or for the mere purpose of returning a verdict.
 

 Once again, neither party objected to the supplemental instructions after it was given. The trial court then excused the jury to allow their deliberations to continue.
 

 *335
 
 Defendant contends that this instruction was given in violation of N.C. Gen. Stat. § 15A-1235 (2015), which contains guidelines for instructing a deadlocked jury. Pursuant to N.C. Gen. Stat. § 15A-1235,
 

 (a) Before the jury retires for deliberation, the judge must give an instruction which informs the jury in order to return a verdict, all 12 jurors must agree to a verdict of guilty or not guilty.
 

 (b) Before the jury retires for deliberation, the judge may give an instruction which informs the jury that:
 

 (1) Jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;
 

 (2) Each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;
 

 (3) In the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and
 

 (4) No juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.
 

 (c) If it appears to the judge that the jury has been unable to agree, the judge may require the jury to continue its deliberations and may give or repeat the instructions provided in subsections (a) and (b). The judge may not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.
 

 (d) If it appears that there is no reasonable possibility of agreement, the judge may declare a mistrial and discharge the jury.
 

 N.C. Gen. Stat. § 15A-1235.
 

 "Whenever the trial judge gives a deadlocked jury any of the instructions authorized by N.C.G.S. § 15A-1235(b), he must give all of them."
 
 State v. Aikens
 
 ,
 
 342 N.C. 567
 
 , 579,
 
 467 S.E.2d 99
 
 , 106 (1996) (citation omitted). Defendant argues in his brief that the trial court's supplemental
 
 *336
 
 instruction omitted the substance of N.C. Gen. Stat. § 15A-1235(b)(1) and (2), and entirely omitted (b)(3). However, "[t]he purpose behind the enactment of N.C.G.S. § 15A-1235 was to avoid coerced verdicts from jurors having a difficult time reaching a unanimous decision."
 
 Evans
 
 ,
 
 346 N.C. at 227
 
 ,
 
 485 S.E.2d at
 
 274 (citing
 
 State v. Williams
 
 ,
 
 339 N.C. 1
 
 , 39,
 
 452 S.E.2d 245
 
 , 268 (1994),
 
 overruled on other grounds by
 

 State v. Warren
 
 ,
 
 347 N.C. 309
 
 ,
 
 492 S.E.2d 609
 
 (1997)
 
 cert. denied
 
 ,
 
 523 U.S. 1109
 
 ,
 
 118 S.Ct. 1681
 
 ,
 
 140 L.Ed.2d 818
 
 (1998) ).
 

 In
 
 State v. Evans
 
 , as in the case
 
 sub judice
 
 , the jurors were admonished not to compromise or surrender their conscientious or honest convictions for the mere purpose of returning a verdict.
 
 Evans
 
 ,
 
 346 N.C. at 227
 
 ,
 
 485 S.E.2d at 274
 
 . "The substance of these instructions was to ask the jury to continue its deliberations, and the instructions were not coercive."
 

 Id.
 

 Our Supreme Court specifically noted in
 
 Evans
 
 "that the effect of the instructions was not so coercive as to impel defendant's trial counsel to object to the instructions."
 

 Id.
 

 (quoting
 
 State v. Peek
 
 ,
 
 313 N.C. 266
 
 , 272,
 
 328 S.E.2d 249
 
 , 253 (1985) ). Defendant's counsel here did not object to the trial court's supplemental instructions when they were given, and, as in
 
 Evans
 
 , the trial court's instructions were not coercive and any error was not fundamental. "[A]fter examination of the entire record, the error [could not be said to have] 'had a probable impact on the jury's finding that the defendant was guilty.' "
 
 Lawrence
 
 ,
 
 365 N.C. at 518
 
 ,
 
 723 S.E.2d at
 
 334 (citing
 
 Odom
 
 , 307 N.C. at 660,
 
 300 S.E.2d at
 
 378 ). This was not plain error.
 

 *686
 
 While the failure of the trial court to give the full instructions as directed by N.C. Gen. Stat. § 15A-1235 did not rise to the level of plain error, we must clarify that at the time the instruction was given, the trial court should reasonably have believed that the jury was deadlocked. Because the trial court gave some of the instructions, but not all of them, it did commit error. However, this error does not automatically entitle Defendant to a new trial because, as our Supreme Court has recognized, " 'every variance from the procedures set forth in the statute does not require the granting of a new trial.' "
 
 State v. Williams
 
 ,
 
 315 N.C. 310
 
 at 327-28,
 
 338 S.E.2d 75
 
 at 86 (1986) (quoting
 
 Peek
 
 ,
 
 313 N.C. at 271
 
 ,
 
 328 S.E.2d at
 
 253 );
 
 See also
 

 State v. Easterling
 
 ,
 
 300 N.C. 594
 
 ,
 
 268 S.E.2d 800
 
 (1980).
 

 Reading the instructions as a whole, and the context in which they were given, the trial court's supplemental instructions neither forced a verdict nor contained elements of coercion, but merely served as a catalyst for further deliberations. Defendant has failed to show how the instructions given could be reasonably interpreted as coercive, and failed to establish plain error. Therefore, because the instructional
 
 *337
 
 mistake had no probable impact on the jury's finding that Defendant was guilty, we conclude that it was not prejudicial error.
 

 Conclusion
 

 The trial court did not err in allowing the State to introduce into evidence the video interview of Gibbes by Detective Neighbors, either substantively as a 'past recollection recorded' exception to hearsay, or corroboratively to substantiate Detective Neighbors' testimony. While the trial court did err in failing to give the full supplemental jury instructions required by N.C. Gen. Stat. § 15A-1235, Defendant will receive no relief from this error as it was neither plain nor prejudicial.
 

 NO PREJUDICIAL ERROR.
 

 Judges CALABRIA and HUNTER, JR concur.
 

 [1]
 

 The evidence would qualify as substantive evidence if it was offered for the truth of the matter asserted and qualified as an exception under our hearsay rules. N.C. Gen. Stat. § 8C-1, Rule 803 (1999).
 

 [2]
 

 If offered simply as corroborative evidence and admitted for this limited purpose, the evidence does not constitute hearsay evidence because it is not offered to prove the truth of the prior out-of-court statement. As such this evidence does not qualify as an exception to the hearsay rule.