IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-884

Filed: 7 July 2020

Mecklenburg County, Nos. 17 CRS 210508-09

STATE OF NORTH CAROLINA

v.

JAMES EDWARD DUNCAN

Appeal by Defendant from Judgments entered 16 April 2019 by Judge Jesse B. Caldwell III in Mecklenburg County Superior Court. Heard in the Court of Appeals 4 March 2020.

*Attorney General Joshua H. Stein, by Associate Attorney General Robert J. Pickett, for the State.*

*Office of the Appellate Defender, by Appellate Defender Glenn Gerding and Assistant Appellate Defender Michele A. Goldman, for defendant-appellant.*

HAMPSON, Judge.

**Factual and Procedural Background**

James Edward Duncan (Defendant) appeals from Judgments entered upon a jury's verdict finding him guilty of two counts of felony Possession of Cocaine. The Record before us tends to show the following:

Officer Andrew Isaacs of the Charlotte-Mecklenburg Police Department (Officer Isaacs) was on "routine patrol" on the afternoon of 19 March 2017. He conducted a traffic stop of Defendant's vehicle on the corner of North McDowell and East 7th Street in Charlotte. Officer Eric Kelly of the Charlotte-Mecklenburg Police Department (Officer Kelly) was also on duty and parked his car behind Isaacs's vehicle during the traffic stop. The sequence of events was captured and recorded on Officer Isaacs's and Officer Kelly's body cameras.

Officer Isaacs approached the driver's side door and informed Defendant he had observed the right taillight of Defendant's car was not operational. Officer Isaacs also stated he observed the front-seat passenger was not wearing a seatbelt. While speaking with Defendant, Officer Isaacs saw a closed pocketknife—roughly five inches in length—in the center console between Defendant and his passenger.

Officer Isaacs asked Defendant to exit his vehicle and told Defendant he was going to retrieve the knife and intended to check Defendant for other weapons. As Defendant got out of the car, Defendant asserted his possession of the knife was not illegal, which Officer Isaacs confirmed. Officer Isaacs clarified he was not searching the vehicle but rather only securing the knife for "our safety." Defendant replied, "okay, no problem at all."

Officer Isaacs again stated he intended to make sure Defendant did not have any weapons on him. Defendant replied he did not have any weapons on him and

stated, "I don't give you permission." Officer Isaacs told Defendant he was "just going to pat [Defendant] down." Defendant said "all right" and again insisted he did not have any weapons on him. Defendant raised his arms and allowed Officer Isaacs to pat him down.

Officer Isaacs checked Defendant's waistband from the outside as well as his pants pockets. Officer Isaacs patted down Defendant's left jacket pocket from the outside. He felt a bulge about the size of a "large grape," which he believed to be marijuana covered in cellophane. Officer Isaacs attempted to retrieve the bulging object from Defendant's outside jacket pocket with his right hand, but it was not located there. Officer Isaacs asked Defendant what the object was. Defendant replied it was something he had bought at a store.

Officer Isaacs realized the bulge he had felt was present in an inside jacket pocket and asked Defendant to pull the object out. Defendant removed a few objects wrapped in clear packaging, showed them to Officer Isaacs, and told him, "it's not illegal, man." Officer Isaacs said "alright, well . . ." and again felt Defendant's left jacket pocket with his right hand.

Officer Isaacs held onto the object from outside the pocket while he lifted Defendant's jacket and reached inside with his left hand. Officer Isaacs then reached inside the exterior pocket to access what he had been feeling with his right hand. Defendant objected as Officer Isaacs moved his hand inside the exterior pocket by

asserting: "What are you doing? Come on, man. This is not a *Terry* frisk, man. You're illegally searching me, man."

Defendant asked Officer Isaacs multiple times to "get [his] sergeant out here, please." Officer Isaacs reached inside Defendant's interior pocket and warned Defendant, "you need to stop." Defendant pushed Officer Isaacs's hand away and again requested Officer Isaacs call his sergeant "because you're doing some illegal s--t to me." Officer Isaacs did not remove his hands from Defendant's pockets. Defendant stated "come on, dude" before turning and running away from the scene.

Officers Isaacs and Kelly gave chase. Officer Kelly caught up with Defendant between a building, bushes, and a gate. Defendant fell down, and as Defendant was getting up, Officer Kelly saw Defendant "digging in his waistband area." Officer Kelly then tasered Defendant, who yelled and fell to the ground.

Officer Isaacs approached with his weapon drawn and ordered Defendant to lie face down on the ground. He handcuffed Defendant and resumed searching him. Officer Isaacs did not find anything at first in the interior pocket he had originally attempted to search. Officer Isaacs searched the surrounding area and found a bag containing, among other things, several grams of crack cocaine and about 0.7 grams of powder cocaine.

While Defendant lay handcuffed on the ground, Officer Kelly searched him and found a cigarette box containing a marijuana blunt in Defendant's left jacket pocket

and a bag of crack cocaine and cash inside of Defendant's shoe. While Defendant was at intake at the Mecklenburg County Jail, Defendant stated the narcotics were for his personal use. A search of Defendant's vehicle was also conducted, and no additional contraband was found. No citations were issued for Defendant's taillight or seat-belt violations.

Defendant was indicted for felony Possession with Intent to Sell or Deliver Cocaine (PWISD Cocaine) and felony Possession of Cocaine. Defendant filed a pretrial Motion to Suppress all the evidence obtained, alleging it was the product of unreasonable searches and seizures in violation of his federal and state constitutional rights. Prior to empaneling a jury, the trial court heard arguments on Defendant's Motion to Suppress.

After hearing evidence and arguments on the Motion to Suppress, the trial court orally concluded the stop of Defendant's vehicle was lawful but that Officer Isaacs had no reasonable justification to believe "Defendant had exercised a suspicious behavior, that he was forcibly armed, or that he was presently dangerous to either of the officers or to others." The trial court held the search of Defendant was unconstitutional and, without more, "any item seized from the Defendant's person or in his vehicle" would be "fruit of the poisonous tree."

The trial court, however, further concluded, "Defendant's conduct after he bolted and ran of his own volition and accord gave rise to the admissibility of the

contraband seized pursuant to said search" under the doctrine of attenuation on the basis Defendant's flight gave rise to independent probable cause to arrest him for resisting an officer and, thus, to search Defendant incident to his arrest. The trial court ruled, "the contraband seized in connection with the Defendant's stop, search, seizure and arrest and the Defendant's subsequent statement to law enforcement were not unconstitutionally seized, that the Defendant's constitutional rights under the state and federal constitutions were not violated, and that the aforesaid evidence is admissible against the Defendant in the trial of these matters."

The case proceeded to trial. During trial, counsel for Defendant repeatedly objected to testimony of Officer Isaacs based on the grounds asserted in the Motion to Suppress and was eventually granted a continuing objection by the trial court. Following trial, the jury found Defendant guilty of the lesser included charge of felony Possession of Cocaine on the count of felony PWISD Cocaine. The jury also found Defendant guilty of the other felony Possession-of-Cocaine charge. The trial court sentenced Defendant to consecutive suspended sentences, placing him on supervised probation for 30 months. Defendant gave Notice of Appeal in open court.

## Issue

The dispositive issue is whether the trial court erred by denying Defendant's Motion to Suppress on the basis Defendant's flight from Officer Isaacs gave rise to application of the attenuation doctrine, allowing for the introduction of evidence

resulting from, and notwithstanding, the unconstitutional search of Defendant conducted after the traffic stop.[1]

## Analysis

### Standard of Review

"Our review of a trial court's denial of a motion to suppress is strictly limited to a determination of whether [the trial court's] findings are supported by competent evidence, and in turn, whether the findings support the trial court's ultimate conclusion." *State v. Reynolds*, 161 N.C. App. 144, 146-47, 587 S.E.2d 456, 458 (2003) (citation and quotation marks omitted). The trial court's conclusions of law, however, are reviewed de novo. *See State v. Fernandez*, 346 N.C. 1, 11, 484 S.E.2d 350, 357 (1997) (citation omitted). "In reviewing the denial of a motion to suppress, we examine the evidence introduced at trial in the light most favorable to the State[.]" *State v. Moore*, 152 N.C. App. 156, 159, 566 S.E.2d 713, 715 (2002) (citations omitted).

### Trial Court's Ruling and Scope of Review

Here, the trial court denied Defendant's Motion to Suppress prior to trial. During trial, Defendant, through his trial counsel, repeatedly objected to the introduction of evidence of the stop, seizure, and searches and ultimately was granted a standing objection to the introduction of this evidence consistent with the Motion

---

[1] Defendant also contends the trial court erred by denying his motion to dismiss the charge of Possession of Cocaine where that charge was a lesser included offense of PWISD Cocaine. However, given our ruling herein, we do not reach this second issue raised by Defendant in this appeal.

to Suppress. Thus, Defendant adequately preserved the trial court's ruling on the Motion to Suppress for appellate review. *See* N.C. Gen. Stat. § 15A-1446(d)(10) (2019); *see also Power Co. v. Winebarger*, 300 N.C. 57, 67-69, 265 S.E.2d 227, 233-34 (1980) (authorizing the use of line objections (citations omitted)).

In sum, the trial court ruled: (1) the initial traffic stop was "lawful and was not a pretextual stop"; (2) the search of Defendant based on Officer Isaacs's observation of the pocketknife in the console of the car was not a valid *Terry* frisk and was violative of Defendant's constitutional rights and thus nothing else appearing any items seized from Defendant or the vehicle and any statement Defendant gave subsequently would be fruit of the poisonous tree and unconstitutionally seized; but (3) Defendant's flight from Officer Isaacs constituted the independent offense of resisting, delaying, or obstructing a public officer in the course of a lawful traffic stop and therefore constituted an intervening event under the attenuation doctrine sufficient to allow for introduction of all evidence seized after Officer Isaacs's unconstitutional *Terry* frisk.

On appeal, Defendant does not challenge the trial court's ruling the initial traffic stop was valid, and we therefore do not address that aspect of the trial court's ruling here. Defendant also does not challenge the authority of Officer Isaacs to ask Defendant to step out of the car and thus away from the pocketknife as part of the traffic stop.

Instead, the arguments in this case focus on the following questions: (1) whether the trial court properly determined Officer Isaacs did not have reasonable suspicion to frisk Defendant; (2) even if Officer Isaacs had reasonable suspicion to frisk Defendant, whether the search of Defendant's jacket pockets exceeded the scope of a permissible *Terry* frisk; and (3) even if the frisk or search of Defendant constituted an unconstitutional search, whether Defendant's flight, on the remarkable facts of this case, constituted the independent offense of resisting, delaying, or obstructing a public officer, thereby constituting an intervening event under the attenuation doctrine sufficient to allow for introduction of all evidence seized after Officer Isaacs's unconstitutional *Terry* frisk.

*A. Terry Frisk*

Defendant first asks this Court to uphold the trial court's ruling Officer Isaacs lacked reasonable suspicion to conduct a *Terry* frisk of Defendant. The State, however, argues the trial court actually erred in ruling the frisk of Defendant unconstitutional and urges this Court to hold the frisk lawful on the basis the presence of the closed pocketknife in the console of the car rendered Defendant armed and dangerous, thereby creating reasonable suspicion for the frisk. We conclude the trial court's findings on this issue are supported by evidence in the Record and support the trial court's conclusion the frisk of Defendant was not supported by

reasonable suspicion and therefore uphold the trial court's ruling on this aspect of Defendant's Motion to Suppress.

Warrantless searches "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372, 124 L. Ed. 2d 334, 343-44 (1993) (citations and quotation marks omitted).

> One such exception was recognized in Terry v. Ohio, which held that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot[,] the officer may briefly stop the suspicious person and make reasonable inquiries aimed at confirming or dispelling his suspicions.

*Id.* at 372-73, 124 L. Ed. 2d at 344 (alteration, citations, and quotation marks omitted). The standard in *Terry* applies to traffic stops. *Berkemer v. McCarty*, 468 U.S. 420, 439, 82 L. Ed. 2d 317, 334 (1984); *State v. Otto*, 366 N.C. 134, 137, 726 S.E.2d 824, 827 (2012).

> [W]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, the officer may conduct a patdown search to determine whether the person is in fact carrying a weapon. The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence[.] Rather, a protective search—permitted without a warrant and on the basis of reasonable suspicion less than probable cause— must be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby. If the protective search goes

> beyond what is necessary to determine if the suspect is
> armed, it is no longer valid under Terry and its fruits will
> be suppressed.

*Dickerson*, 508 U.S. at 373, 124 L. Ed. 2d at 344 (citations and quotation marks

omitted).

Here, the trial court concluded Officer Isaacs did not have reasonable suspicion

to frisk Defendant because "there was no reasonable belief on the part of Officer

Isaacs that the Defendant posed a danger to him by reason of the pocket knife being

located at the console" and "there was no justification to believe" Defendant was

"forcibly armed or that he was presently dangerous to either of the officers or to

others." In reaching this conclusion, the trial court found Officer Isaacs's colleague,

Officer Kelly, could stand guard at the car with Defendant, the passenger, and the

closed pocketknife contained inside while Officer Isaacs completed the traffic stop,

there was no suspicious or furtive movement or behavior by Defendant, and the traffic

stop occurred in broad daylight in uptown Charlotte blocks from the County

Courthouse. These findings by the trial court are supported by the evidence and

support the trial court's ultimate conclusion Officer Isaacs lacked reasonable

suspicion to frisk Defendant. *See State v. Biber*, 365 N.C. 162, 167-68, 712 S.E.2d

874, 878 (2011) ("The standard of review in evaluating the denial of a motion to

suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." (citation omitted)).[2]

The State argues the mere presence of the pocketknife in the front console of the car means Defendant should be considered armed and should further automatically be considered dangerous. Thus, the State contends Officer Isaacs's frisk should be deemed permissible. In support of its position, the State points to our recent decision in *State v. Malachi. See* ___ N.C. App. ___, ___, 825 S.E.2d 666, 671 ("The risk of danger is created simply because the person, who was forcibly stopped, is armed." (alteration and quotation marks omitted) (quoting *United States v. Robinson*, 846 F.3d 694, 700 (4th Cir. 2017))), *appeal dismissed and disc. review denied*, 372 N.C. 702, 830 S.E.2d 830 (2019).

However, the facts of *Malachi* are entirely inapposite to this case. There, law enforcement received a tip the defendant was illegally in possession of a firearm. *Id.* at ___, 825 S.E.2d at 668. After the defendant observed uniformed law enforcement approaching, he engaged in a behavior described as "blading" and used to conceal the presence of a firearm

---

[2] Our dissenting colleague posits Defendant consented to the frisk. However, the trial court made no findings as to Defendant's consent to the frisk; therefore, we do not reach this issue. *See, e.g.*, *State v. Little*, 270 N.C. 234, 240, 154 S.E.2d 61, 66 (1967) ("The trial judge is in a better position to weigh the significance of the pertinent factors [supporting a finding of consent] than is an appellate tribunal. . . . The weight to be given the evidence was peculiarly one for the trial judge."); *General Specialties Co. v. Teer Co.*, 41 N.C. App. 273, 275, 254 S.E.2d 658, 660 (1979) (emphasizing that where a trial judge sits as the trier of the facts, the appellate court cannot substitute itself for the trial judge in this task (citations omitted)); *see also State v. Smith*, 135 N.C. App. 377, 380, 520 S.E.2d 310, 312 (1999) (remanding to the trial court for further findings of fact on whether the defendant's consent was voluntary because the evidence was in dispute on this point and the trial court's findings did not include a specific finding resolving this dispute). Moreover—and perhaps illustrative of how subjective an exercise this may be—in our view, Defendant does not appear to consent to the frisk but rather simply complies with Officer Isaacs's demand notwithstanding Defendant's stated objection. *See Little*, 270 N.C. at 239, 154 S.E.2d at 65 ("To be voluntary, it must be shown that the [defendant's consent] was free from coercion, duress or fraud, and *not given merely to avoid resistance*." (emphasis added) (citation omitted)).

on his person and began to walk away from the officers. *Id.* at ___, 825 S.E.2d at 670. Once the officers approached and grabbed him, the defendant attempted to squirm away. *Id.* at ___, 825 S.E.2d at 668. A *Terry* frisk revealed a revolver in the defendant's waistband. *Id.* Thus, *Malachi* involved evidence that the defendant possessed a firearm on his person that he attempted to conceal, which—"coupled with [the d]efendant's struggling during the stop and his continued failure to inform the officers that he was armed as required" by our concealed-carry statute—provided the officers with reasonable suspicion to frisk the defendant. *Id.* at ___, 825 S.E.2d at 671 (citation omitted).

Likewise, in *Robinson*, the Fourth Circuit determined law enforcement officers had reasonable suspicion to frisk a defendant for weapons where officers received a tip that someone had been seen loading a gun and concealing it in his pocket in a parking lot of the highest crime area in town and known for drug trafficking before getting in a blue-green Toyota as a passenger. 846 F.3d at 696-97, 700 (citations omitted). Shortly after the tip, responding officers stopped a blue-green Toyota, corroborating the tip, in which the defendant was a passenger on the basis neither occupant of the car was wearing a seatbelt. *Id.* at 697. The defendant was asked to exit the car, and as he got out, an officer asked him if he was armed. *Id.* Defendant did not reply but instead gave what was described as an: " ' "oh, crap" look[ ].' " *Id.* (alteration in original). The defendant was immediately frisked, and a loaded gun was found in his pocket. *Id.*

In both cases, law enforcement officers had ample reason to suspect the defendant possessed and concealed a dangerous weapon on their person, *coupled* with behavior giving rise to suspicion the defendant may be dangerous. *See Michigan v. Long*, 463 U.S. 1032,

1050, 77 L. Ed. 2d 1201, 1220 (1983) (reiterating that when determining whether a *Terry* frisk is proper, the "issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger" (citation and quotation marks omitted)).  Central to our analysis here: the trial court's findings of fact—unchallenged by the State—reveal these circumstances did not exist in the present case. Indeed, here, the two officers were investigating a broken taillight and a seat-belt violation with no suspicion of any other criminal activity afoot.  The trial court expressly found Defendant did not exhibit any furtive or suspicious behavior.  Defendant was compliant with Officer Isaacs's traffic stop and requests, did not deny or conceal the existence of the pocketknife, and exited the car upon command, thereby removing himself away from the knife.[3]

Accordingly, the trial court's findings, which are supported by competent evidence, support the trial court's conclusion Officer Isaacs lacked reasonable suspicion to frisk Defendant, thus violating Defendant's Fourth Amendment right against unreasonable searches.[4]  Consequently, we agree with the trial court's analysis that, nothing else

---

[3] The dissent cites Defendant's prior convictions and invocation of *Terry* by name as evidence Defendant "had 'ridden this rodeo' many times[,]" seemingly suggesting this should be a factor weighing in favor of finding reasonable suspicion.  Such considerations, however, are wholly irrelevant. Certainly, in this case, neither the trial court nor Officer Isaacs relied on these irrelevant considerations in making any reasonable-suspicion determination.  Moreover, we fail to see how a suspect's invocation of their constitutional rights should be used against them in a court of law. Particularly so where our courts have long presumed our citizenry know both their rights and the law. *See State v. Boyett*, 32 N.C. 336, 343 (1849) ("Every one competent to act for himself is presumed to know the law.").

[4] Because we uphold the trial court's ruling Officer Isaacs lacked reasonable suspicion to frisk Defendant at the outset of the stop, we do not address the State's argument Officer Isaacs developed probable cause based on that frisk to believe Defendant possessed contraband based on his "plain feel" of the object inside of Defendant's jacket.

appearing, at this point all evidence recovered as a result of the unconstitutional frisk would otherwise be properly excluded as fruit of the poisonous tree.

However, because the trial court further ruled exclusion of this evidence was not required under the attenuation doctrine as a result of Defendant's subsequent flight and search incident to his arrest, our analysis does not end there. We must next determine whether the evidence obtained as fruit of the unlawful frisk should be suppressed as evidence pursuant to the exclusionary rule or whether, as the trial court concluded, the attenuation doctrine applies.

*B. Attenuation Doctrine*

If evidence is obtained in violation of the Fourth Amendment, the exclusionary rule bars the admission of such evidence. *Wong Sun v. United States*, 371 U.S. 471, 484, 9 L. Ed. 2d 441, 453 (1963). "[T]he exclusionary rule encompasses both the primary evidence obtained as a direct result of an illegal search or seizure and, relevant here, evidence later discovered and found to be derivative of an illegality, the so-called 'fruit of the poisonous tree.'" *Utah v. Strieff*, ___ U.S. ___, ___, 195 L. Ed. 2d 400, 407 (2016) (citation and quotation marks omitted).

The attenuation doctrine, which the trial court in this case found applicable, is an exception to the exclusionary rule. *Id.* As the United States Supreme Court has articulated: "Evidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that the interest protected by the constitutional

guarantee that has been violated would not be served by suppression of the evidence obtained." *Id.* (citation and quotation marks omitted). Three factors guide courts in determining whether application of this doctrine is warranted:

> First, we look to the "temporal proximity" between the unconstitutional conduct and the discovery of evidence to determine how closely the discovery of evidence followed the unconstitutional search. Second, we consider "the presence of intervening circumstances." Third, and "particularly" significant, we examine "the purpose and flagrancy of the official misconduct."

*Id.* at ___, 195 L. Ed. 2d at 408 (citations omitted); *see also State v. Hester*, 254 N.C. App. 506, 517, 803 S.E.2d 8, 17 (2017) (applying *Strieff*'s three-factor test).

Applying the first factor, the *Strieff* Court "declined to find that this factor favors attenuation unless 'substantial time' elapses between an unlawful act and when the evidence is obtained." ___ U.S. at ___, 195 L. Ed. 2d at 408 (citation omitted). Here, the trial court made no express finding on the first factor. However, in *Strieff*, the United States Supreme Court determined "only minutes" had passed between an illegal detention of the defendant and the discovery of drug contraband on him, which weighed in favor of suppression. *Id.* (citation omitted); *see also State v. Thomas*, ___ N.C. App. ___, ___, 834 S.E.2d 654, 661 (2019) (holding a three-day period was not a "substantial amount of time"). Here, as in *Strieff*, "only minutes" had gone by between Officer Isaacs's unconstitutional search and the discovery of the drug contraband on Defendant; accordingly, this factor weighs in favor of

suppression.  ___ U.S. at ___, 195 L. Ed. 2d at 408 (citation omitted).  Indeed, the State in this case concedes as much.

Rather, the State points to the second factor—" 'the presence of intervening circumstances' "—as the central and controlling factor here.  *Id.* (citation omitted).  Certainly, this is the factor the trial court, relying on Defendant's flight, saw as critical to its analysis.

Unquestionably, our Court has held a defendant's "commission of a separate and distinct criminal offense is alone sufficient as an 'intervening circumstance' to purge the taint of the presumed illegal stop[.]"  *Hester*, 254 N.C. App. at 519, 803 S.E.2d at 18.  In *Hester*, after the defendant was stopped and asked to lift his shirt, on the belief the defendant had a weapon, the defendant pulled out a handgun and attempted to fire at the officer.  *Id* at 518, 803 S.E.2d at 17.  Because the defendant committed "a separate and distinct criminal offense"—attempting to fire a weapon at a police officer—the evidence of the handgun was admissible under the attenuation doctrine.  *Id.* at 519, 803 S.E.2d at 18.

Here, the trial court determined Defendant's subsequent flight was unlawful because the trial court concluded Defendant attempted to flee from a *lawful* traffic stop—constituting the crime of resisting, delaying, or obstructing an officer— providing Officers Isaacs and Kelly with probable cause to arrest Defendant for

resisting an officer and search Defendant incident to that arrest.[5] Thus, consequently, the illicit drugs recovered from and around Defendant and his subsequent incriminatory statements were admissible under the attenuation doctrine. Defendant, however, contends since the *Terry* frisk was unlawful, the traffic stop was no longer lawful and, once the stop became unlawful, he had a right to resist the stop.

Section 14-223 of our General Statutes provides, "[i]f any person shall willfully and unlawfully resist, delay or obstruct a public officer in discharging or attempting to discharge a duty of his office, he shall be guilty of a Class 2 misdemeanor." N.C. Gen. Stat. § 14-223 (2019). Our Court has held, "flight from a *lawful* investigatory stop may provide probable cause to arrest an individual for violation of [Section] 14-223." *State v. Washington*, 193 N.C. App. 670, 679, 668 S.E.2d 622, 628 (2008)

---

[5] The dissent asserts our opinion does not faithfully adhere to our standard of review, contending our opinion "denies the same deference [we afforded the trial court's findings of fact regarding whether the officers had reasonable suspicion to frisk Defendant] to the trial court's findings [concerning whether Defendant was attempting to flee a *lawful* traffic stop], which support" application of the attenuation doctrine. Not so. Faithful application of the standard of review here requires a two-part analysis. In our reasonable-suspicion analysis, we "deferred" to the trial court's findings of fact surrounding the initial traffic stop and frisk precisely because they were supported by competent evidence in the Record, which in turn supported the trial court's conclusion Officer Isaacs lacked reasonable suspicion to conduct the *Terry* frisk. *See Biber*, 365 N.C. at 167-68, 712 S.E.2d at 878 (citation omitted). In contrast, the trial court's determination of whether Defendant's flight was from an *unlawful* or a *lawful* traffic stop is a conclusion of law. *See, e.g.*, *In re Gardner*, 39 N.C. App. 567, 571, 251 S.E.2d 723, 726 (1979) (explaining "whether the facts so found by the trial court . . . are such as to establish probable cause in a particular case, is a question of law as to which the trial court's ruling may be reviewed on appeal"). As such, we correctly apply de novo review to the question of whether Defendant's flight constituted the intervening statutory crime of resisting, delaying, or obstructing an officer so as to give rise to the attenuation doctrine. *See Fernandez*, 346 N.C. at 11, 484 S.E.2d at 357 (explaining conclusions of law are reviewed de novo (citation omitted)).

(emphasis added) (citation and quotation marks omitted). Here, the trial court concluded Defendant's flight was from a *lawful* traffic stop, providing Officer Isaacs with probable cause to arrest Defendant for resisting, delaying, or obstructing an officer under Section 14-223.

However, under *Rodriguez v. United States*, a traffic stop "prolonged beyond" the "time reasonably required to complete [its] mission" is unlawful. 575 U.S. 348, 357, 191 L. Ed. 2d 492, 500 (2015) (citations and quotation marks omitted). A traffic stop's "mission" is "to address the traffic violation that warranted the stop and attend to related safety concerns[.]" *Id.* at 354, 191 L. Ed. 2d at 498 (citations omitted); *see also Florida v. Royer*, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 233 (1983) ("The scope of the detention must be carefully tailored to its underlying justification."). Importantly, "[o]n-scene investigation into other crimes, however, detours from that mission." *Rodriguez*, 575 U.S. at 356, 191 L. Ed. 2d at 500 (citation omitted).

In *State v. Bullock*, our Supreme Court, interpreting *Rodriguez*, held a frisk lasting eight or nine seconds did not "measurably extend the duration of the stop" and therefore did not violate the Fourth Amendment. 370 N.C. 256, 262-63, 805 S.E.2d 671, 676-77 (2017) (citation and quotation marks omitted). Relying on *Bullock*, the dissent here concludes the roughly thirty-four-second frisk and unconstitutional search of Defendant did not measurably extend the duration of the stop and therefore Officer Isaacs's initial traffic stop remained lawful. As such, our

dissenting colleague concludes Officer Isaacs had probable cause to arrest Defendant for resisting, delaying, or obstructing an officer after Defendant fled from a *lawful* traffic stop. *See Washington*, 193 N.C. App. at 679, 668 S.E.2d at 628 (citation omitted). We, however, disagree and believe *Bullock* is distinguishable, requiring a different result.

The *Bullock* Court held the officer's frisk of the defendant did not unconstitutionally prolong the traffic stop for two reasons. First, "the frisk lasted eight or nine seconds." 370 N.C. at 262, 805 S.E.2d at 677. Second, and more importantly, the *purpose* of the officer's frisk was for "the officer's safety[,]" which "stems from the mission of the traffic stop itself, [meaning] time devoted to officer safety is time that is reasonably required to complete that mission." *Id.* at 262, 805 S.E.2d at 676.

In contrast, even if the frisk of Defendant by Officer Isaacs could be deemed related to the mission of the stop, Officer Isaacs's unconstitutional search into Defendant's jacket pockets had nothing to do with the "mission" of the traffic stop. *See Rodriguez*, 575 U.S. at 354, 191 L. Ed. 2d at 498 (citations omitted). Indeed, Officer Isaacs testified he believed he felt marijuana in Defendant's jacket and that *this* was the purpose of the search. As *Rodriguez* recognized, "[o]n-scene investigation into other crimes . . . detours from [the traffic stop's] mission." *Id.* at 356, 191 L. Ed. 2d at 500 (citation omitted). Given the fact this search was unconstitutional and that

it was in no way related to the mission of the traffic stop, the traffic stop was "prolonged beyond" the "time reasonably required to complete [its] mission" and therefore was unlawful. *Id.* at 357, 191 L. Ed. 2d at 500 (citations and quotation marks omitted).

Our Supreme Court has long recognized:

> It is axiomatic that every person has the right to resist an unlawful arrest. In such case the person attempting the arrest stands in the position of a wrongdoer and may be resisted by the use of force, as in self-defense.
>
> True the right of a person to use force in resisting an illegal arrest is not unlimited. He may use only such force as reasonably appears to be necessary to prevent the unlawful restraint of his liberty.

*State v. Mobley*, 240 N.C. 476, 478-79, 83 S.E.2d 100, 102 (1954) (citations omitted).

Because the traffic stop was unlawful at the point of Officer Isaacs's unconstitutional search, Defendant had "the right to resist [the] unlawful arrest." *Id.* at 478, 83 S.E.2d at 102; *see also State v. Branch*, 194 N.C. App. 173, 178, 669 S.E.2d 18, 21 (2008) (recognizing where an officer unlawfully extended the duration of the defendant's traffic stop, the defendant had "the right to use such force as reasonably appeared to be necessary to prevent the unlawful restraint of his liberty" (alteration, citation, and quotation marks omitted)). [6]

---

[6] Based in part on *United States v. Ferrone*, 438 F.2d 381 (3d Cir. 1971), the dissent concludes, "Defendant did not possess the right to lawfully flee from Officer Isaacs'[s] purportedly unlawful search during an otherwise-lawful traffic stop." However, as discussed *supra*, Defendant's flight was from an

Here, the State actually contends, "Defendant had other means of resistance to the frisk besides the unreasonable act of flight. For example, he could have stated his opposition to the search, passively resisted, or used reasonable force." The facts of this case, however, do not support the State's assertion.

Defendant repeatedly stated his opposition to the search, informed Officer Isaacs that he was performing an illegal *Terry* frisk, and requested Officer Isaacs to get his sergeant at least four separate times. Further, Defendant placed his hands on Officer Isaacs's arm in an attempt to remove Officer Isaacs's hand from inside Defendant's pockets. The State makes no attempt to articulate what more Defendant could have done to responsibly resist the illegal search short of flight. Indeed, our courts have recognized flight is a valid way of avoiding an unconstitutional search or seizure. *See, e.g.*, *Branch*, 194 N.C. App. at 178, 669 S.E.2d at 21 (citation omitted). Further, "[w]hile an individual's flight from a lawful investigatory stop may provide probable cause to arrest an individual for [resisting, delaying, or obstructing an

---

*unlawful* warrantless search of his person unrelated to the traffic stop; therefore, Defendant had the right to resist this unlawful search. *See Branch*, 194 N.C. App. at 178, 669 S.E.2d at 21 (citation omitted). Further, we do not find *Ferrone* persuasive or applicable for two reasons. First, *Ferrone* held, "a person does not have a right to forcibly resist the *execution of a search warrant* by a peace officer or government agent, even though that warrant may subsequently be held to be invalid." 438 F.2d at 390 (emphasis added) (footnote omitted). Here, Defendant was not resisting the execution of a *search warrant* but rather was fleeing an unlawful warrantless search of his person; therefore, *Ferrone*'s pronouncement is inapposite. Second, *Ferrone* explicitly stated it was not deciding the question of "[w]hether a person would, under some circumstances, have a right to resist an unlawful *warrantless* search[.]" *Id.* at 390 n.19. Because *Ferrone* did not decide this question and because our Court has addressed this question, answering in the affirmative, we respectfully disagree with the dissent's reliance on *Ferrone*. *See Branch*, 194 N.C. App. at 178, 669 S.E.2d at 21 (recognizing the right to flee an unlawful warrantless arrest (citation omitted)).

officer,] an individual's flight from a consensual encounter or *from an unlawful investigatory stop* does not supply such probable cause." *State v. Joe* (*Joe I*), 213 N.C. App. 148, 153, 711 S.E.2d 842, 845 (2011) (emphasis added) (citations and quotation marks omitted), *vacated in part on other grounds per curiam*, 365 N.C. 538-39, 723 S.E.2d 339-400 (2012).

Accordingly, Officer Isaacs did not have probable cause to arrest Defendant because of his flight from what had become an *unlawful* investigatory stop and search.[7] *See id.* (citations omitted). Because under our prior precedent Defendant's flight was not unlawful, Defendant's flight cannot constitute "a separate and distinct criminal offense" sufficient to purge the taint of the illegal frisk under the second factor of the attenuation doctrine. *Hester*, 254 N.C. App. at 519, 803 S.E.2d at 18.

Rather, we see *Thornton v. State* as highly instructive on this second factor. 465 Md. 122, 214 A.3d 34 (2019). In *Thornton*, officers attempted to frisk the defendant without the requisite reasonable suspicion, and the defendant ran away from the officers, ultimately leading to the officers seizing the defendant and finding a handgun on the defendant. *Id.* at 130-34, 149, 214 A.3d at 38-41, 50. The Maryland Court of Appeals, Maryland's highest court, concluded the defendant's attempt to flee—even if improper—did not constitute an intervening act breaking the causal

---

[7] There is no indication on the Record before us Defendant was even charged with resisting an officer or cited for any traffic infraction.

connection between the illegal police conduct and the discovery of the handgun

because

> [t]he officers' conduct indicates that when they frisked [the
> defendant], the officers were executing their intended mission to
> recover evidence of guns, drugs, or other contraband. From the
> moment they confronted [the defendant], the officers sought to
> investigate [the defendant] for evidence of a crime, regardless of
> whether they possessed the requisite quantum of suspicion to
> render a search of [the defendant] reasonable. As a result, we
> cannot say, on the facts before us, that [the defendant's] attempt
> to flee caused the officers to discover the handgun in any
> meaningful sense. Not unlike in [*State v.*] *Owens*, the officers
> here decided that they were going to search [the defendant] for
> evidence of a crime—based on an unparticularized hunch that he
> may possess a weapon—before [the defendant's] flight. *See* 922
> N.E.2d 939 (2013) (holding that the causal connection between
> unlawful police conduct and the discovery of evidence remained
> intact where officers decided to arrest the suspect before he ran
> away, and therefore the suspect's flight did not cause the
> evidence's discover "in any meaningful sense[.]"). Thus, the
> discovery of [the defendant's] firearm was not caused by his
> conduct; it was an imminent product of the officers' own
> predisposition to locate and seize guns and contraband.

*Id.* at 157-58, 214 A.3d at 55 (alteration in original) (footnote omitted).

Here, on the facts of this case, Defendant's flight from an unlawful warrantless

search—following his repeated peaceful objections to the unlawful warrantless

search—does not constitute an intervening act sufficient to "purge the taint" of the

unconstitutional search. Officer Isaacs's testimony illustrates he believed Defendant

had marijuana in his jacket and he was attempting to retrieve this before Defendant

fled. Thus, the discovery of the drug contraband was not caused by Defendant's

conduct during the traffic stop; "it was an imminent product of [Officer Isaacs's] predisposition to locate and seize . . . contraband." *Id.* at 158, 214 A.3d at 55 (footnote omitted). Accordingly, this second factor also weighs in favor of suppression.

The third factor—the purpose and flagrancy of the official misconduct—is perhaps the most critical to the analysis. *See Strieff*, ___ U.S. at ___, 195 L. Ed. 2d at 408 (citation omitted). This is so because it focuses on the primary purpose of the exclusionary rule—deterring police misconduct. *See Hester*, 254 N.C. App. at 514, 803 S.E.2d at 15 (recognizing "the exclusionary rule [is] applicable only where its deterrence benefits outweigh its substantial social costs" (alteration, citation, and quotation marks omitted)). "For the violation to be flagrant, more severe police misconduct is required than the mere absence of proper cause for the seizure." *Strieff*, ___ U.S. at ___, 195 L. Ed. 2d at 410 (citation omitted); *see also Kaupp v. Texas*, 538 U.S. 626, 633, 155 L. Ed. 2d 814, 822 (2003) (*per curiam*) (finding flagrant violation where a warrantless arrest was made in the arrestee's home after police were denied a warrant and at least some officers knew they lacked probable cause).

Here, the trial court concluded Officer Isaacs's "unconstitutionally permissible search was done in good faith[.]" This conclusion by the trial court, however, is simply not supported by the evidence in this case. As the trial court acknowledged, at a minimum, Officer Isaacs lacked justification to reach inside of Defendant's jacket. Indeed, when Officer Isaacs moved his hand inside Defendant's exterior pocket,

Defendant objected, stating—"What are you doing?  Come on, man.  This is not a *Terry* frisk, man.  You're illegally searching me, man."  Defendant also requested Officer Isaacs "get [his] sergeant out here" at least four times.  Instead of taking the opportunity—indeed, at Defendant's invitation—to deescalate the situation, Officer Isaacs proceeded with the flagrantly unconstitutional search.  *See Kaupp*, 538 U.S. at 633, 155 L. Ed. 2d at 822.

Weighing these three factors as a whole, we conclude on these extraordinary facts the trial court erred in denying Defendant's Motion to Suppress and further conclude the attenuation doctrine does not apply to prevent exclusion of the fruit of the unconstitutional warrantless search in this case.  *Cf. Strieff*, ___ U.S. at ___, 195 L. Ed. 2d at 410 (holding attenuation found where two out of three factors supported that conclusion).  This result is in keeping with the purpose of the exclusionary rule— to deter police misconduct.  Accordingly, Defendant's Motion to Suppress should have been allowed.[8]  Therefore, we reverse the trial court's ruling on the Motion to Suppress and grant Defendant a new trial.

In so concluding, we observe the events at issue stem from a series of poor decisions by both Defendant and Officer Isaacs that could have resulted in disastrous

---

[8] Although a bag containing cocaine was found in the surrounding area of Defendant after his arrest, Defendant did not voluntarily abandon this contraband.  *See State v. Joe* (*Joe II*), 222 N.C. App. 206, 212-13, 730 S.E.2d 779, 783 (2012) (holding where the defendant's abandonment of contraband was the product of his illegal arrest, the abandonment was not voluntary and required suppression (citation omitted)).

consequences. Defendant was tasered. It could have been far worse. Defendant's flight put himself at risk of serious bodily harm and increased the risk of harm to the officers in pursuit. To be fair, it was Defendant's decision to transport illegal drugs that at a base level initiated these events. We further echo the Maryland Court of Appeals in *Thornton*:

> We emphatically do not condone [Defendant's] efforts to run away from the police officers. . . . Defendants facing these circumstances should resort to the courts, and not the streets, to resolve the constitutionality of searches and seizures. "There are strong public policy reasons why self-help, involving the use of force against a person, should not be condoned."

465 Md. at 159-60, 214 A.3d at 56 (citation omitted). In the same manner, though, we also should not "overlook the reactive nature of [Defendant's] flight, in conjunction with [Officer Isaacs's] purposeful and intrusive conduct. . . . [Defendant's] attempt to flee the situation created by the police was directly connected to and a result of the unlawful frisk." *Id.* at 160, 214 A.3d at 56.

## Conclusion

Accordingly, for the foregoing reasons, we reverse the trial court's ruling on Defendant's Motion to Suppress and grant Defendant a new trial.

NEW TRIAL.

Judge DIETZ concurs.

Judge TYSON dissents by separate opinion.

No. COA19-884 – *State v. Duncan*

TYSON, Judge, dissenting.

The issues before this Court include: (1) whether Officer Isaacs had reasonable suspicion to believe Defendant was armed and dangerous to justify a *Terry* pat-down; (2) whether Defendant consented to Officer Issacs' search; (3) whether Officer Isaacs developed probable cause to believe Defendant possessed contraband based on his "plain feel" of the object inside of Defendant's jacket pocket; (4) whether Officer Isaacs' pat-down extended the lawful traffic stop, to condone and excuse Defendant's flight from the admittedly lawful stop; and, (5) whether the trial court erred where insufficient evidence supports submitting two distinct charges of possession of cocaine to the jury.

Neither Defendant nor the majority's opinion challenges the trial court's finding and conclusion the initial traffic stop was reasonable and lawful. Neither Defendant nor the majority's opinion challenges Officer Isaacs' authority to ask Defendant to exit his car and move away from the weapon in plain view as part of the lawful traffic stop.

Defendant first asks this Court to uphold the trial court's ruling Officer Isaacs lacked reasonable suspicion to conduct a *Terry* pat-down of Defendant. The State counters the trial court erred in ruling Defendant's pat-down was unconstitutional. The State correctly argues the pat-down was lawful because the presence of the knife in the console of the car rendered Defendant armed and dangerous, creating reasonable suspicion for the *Terry* pat-down.

The presence of and Defendant's access to the knife in the front console shows Officer Issacs could consider Defendant to be armed and dangerous. The State cites this Court's recent decision in *State v. Malachi*, which was reviewed and left undisturbed by our Supreme Court. __ N.C. App. __, __, 825 S.E.2d 666, 671 ("The risk of danger is created simply because the person, who was forcibly stopped, is armed." (alteration omitted) (quoting *United States v. Robinson*, 846 F.3d 694, 700 (4th Cir.), *cert. denied*, __ U.S. __, 199 L. Ed. 2d 277 (2017))), *appeal dismissed and disc. review denied*, 372 N.C. 702, 830 S.E.2d 830 (2019). Presuming Defendant's consent was revoked or the pat-down exceeded *Terry v. Ohio*'s standards and was unconstitutional, the trial court also found the attenuation doctrine allowed admission of the illegal contraband evidence as an exception to the exclusionary rule. *See Utah v. Strieff*, __ U.S. __, __, 195 L. Ed. 2d 400, 407 (2016). As the Supreme Court of the United States stated: "Evidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." *Id.* (citation and internal quotation marks omitted).

The trial court found and concluded Defendant's flight from Officer Isaacs' pat-down was "interrupted by" his unlawful resisting, delaying, or obstructing an officer. *Id.* The trial court properly found Defendant's conduct provided Officers Isaacs and Kelly with probable cause to arrest Defendant for resisting, delaying, or obstructing an officer and to search Defendant incident to that arrest. The illicit drugs recovered

from and around Defendant and his subsequent incriminatory statements while in custody were admissible under the attenuation doctrine. *See id.*

Our Court has applied the holding in *Utah v. Strieff*, and held a defendant's "commission of a separate and distinct criminal offense is alone sufficient as an intervening circumstance to purge the taint of the presumed illegal stop[.]" *State v. Hester*, 254 N.C. App. 506, 519, 803 S.E.2d 8, 18 (2017) (internal quotation marks omitted).

In *Hester*, the defendant was stopped and asked to lift his shirt, on the belief the defendant may have had a weapon. *Id.* at 518, 803 S.E.2d at 17. The defendant pulled out a handgun and attempted to fire at the officer. *Id.* Even with a "presumed illegal stop" in *Hester*, when the defendant attempted to fire a weapon at a police officer, he committed "a separate and distinct criminal offense," the evidence of the handgun was admissible under the attenuation doctrine. *Id.* at 519, 803 S.E.2d at 18.

The majority's opinion purports to support proper deference to the trial court's findings of fact, when supported by evidence in the record on its ruling on the search, but then denies the same deference to the trial court's unchallenged findings, which support the conclusion the attenuation doctrine is sufficient to uphold the trial court's ruling on this aspect of Defendant's motion to suppress. The rules and precedents do not allow such inconsistency in application.

The trial court correctly found and concluded Defendant's flight constituted the independent offense of resisting, delaying, or obstructing a public officer. Presuming Officer Issacs' search exceeded Defendant's consent, the *Terry* pat-down, or was without probable cause for contraband, Defendant's unlawful fleeing caused an intervening event under the attenuation doctrine to allow for admission of all evidence seized incident to and after his arrest. The trial court properly found and concluded Defendant unlawfully fled from Officer Isaacs during an otherwise-lawful traffic stop. *See United States v. Ferrone*, 438 F.2d 381 (3d Cir. 1971).

The majority's opinion errs in affirming the trial court's conclusion that Officer Isaacs did not possess the requisite reasonable suspicion to pat Defendant down upon observing the knife in Defendant's vehicle. The majority's opinion also fails to analyze Defendant's voluntary consent and actions to allow the search or Officer Issacs' developing probable cause after detecting contraband during the pat-down.

The majority's opinion applies a different standard of review to the same order and further errs in reversing the trial court's unchallenged findings and conclusions that Defendant's flight from Officer Isaacs during a lawful traffic stop was unlawful, and that the evidence seized pursuant to the search incident to his arrest was admissible as attenuated from the purportedly unconstitutional search. Defendant fails to show any prejudicial or reversible error exists to reward a new trial. I respectfully dissent.

*TYSON, J., dissenting*

I. <u>Motion to Suppress</u>

A. Standard of Review

Appellate review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982) (citations omitted). "The trial court's conclusions of law . . . are fully reviewable on appeal." *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).

B. Analysis

*1. Initiation of the Pat-Down*

The trial court erroneously concluded Officer Isaacs could not have had a reasonable suspicion "that the Defendant had exercised a suspicious behavior, that he was forcibly armed, or that he was presently dangerous to either of the officers or to others" to constitutionally initiate a pat-down under *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889 (1968). Officer Isaacs possessed and articulated a reasonable suspicion that Defendant was armed, and potentially dangerous, because Defendant possessed a knife in the console adjacent to where he was seated in his car.

This Court stated: "The risk of danger is created simply because the person, who was forcibly stopped, is armed." *Malachi*, __ N.C. App. at __, 825 S.E.2d at 671

(citation omitted). The Supreme Court of the United States has also recognized a police officer may reasonably believe the driver of a vehicle with a knife inside it may pose a danger to officer safety, if the driver is permitted to re-enter the vehicle. *Michigan v. Long*, 463 U.S. 1032, 1050, 77 L. Ed. 2d 1201, 1220 (1983) ("Long was not frisked until the officers observed that there was a large knife in the interior of the car into which Long was about to reenter.").

Defendant argues the totality of the circumstances in *Long* and other cases the State cites are distinguishable from the present case. In *Long*, "[t]he hour was late and the area rural. Long was driving his automobile at excessive speed, and his car swerved into a ditch. The officers had to repeat their questions to Long, who appeared to be under the influence of some intoxicant." *Id.* (internal quotation marks omitted).

Defendant notes he was driving in broad daylight near downtown Charlotte and promptly pulled over when the traffic stop was initiated. Defendant argues the totality of the circumstances support the trial court's conclusion Officer Isaacs could not have had a reasonable suspicion that Defendant was armed and dangerous, when the knife in the console was the only fact Officer Isaacs cited to justify his pat-down. These arguments are distinctions without a difference. The trial court's conclusion also erroneously overlooked Officer Issacs' right to demand and Defendant's voluntary consent to exit his vehicle and be patted down.

The majority's opinion does not analyze Defendant's consent to the pat-down. "It is well-settled law that a person may waive his right to be free from unreasonable searches and seizures." *State v. Little*, 270 N.C. 234, 238, 154 S.E.2d 61, 64-65 (1967). "To be voluntary the consent must be unequivocal and specific, and freely and intelligently given. . . . [I]t must be shown that the waiver was free from coercion, duress or fraud, and not given merely to avoid resistance." *Id.* at 239, 154 S.E.2d at 65 (citations and internal quotation marks omitted).

We all agree Officer Issacs had the right to instruct Defendant to exit his vehicle. Even if Defendant may have initially objected to Officer Isaacs' patting down his person, he consented to allow a search of the car after he stepped out. Once Officer Isaacs informed Defendant he was "just going to pat [him] down," Defendant consented, said, "all right" and voluntarily raised his arms to be patted down.

Considering the totality of the circumstances, Defendant's consent to the pat-down was voluntary and unequivocal, at least at the outset of the pat-down. Officer Isaacs did not violate Defendant's constitutional rights after he observed a weapon next to where Defendant was seated, asked Defendant to exit the vehicle, and initiated the consensual or *Terry* pat-down. *See Long*, 463 U.S. at 1050, 77 L. Ed. 2d at 1220.

Contrary to the trial court's conclusion, whether analyzing Officer Isaacs' pat-down as a consensual search or as a *Terry* pat-down, Defendant arguably intended to

give Officer Isaacs consent to pat him down. The pat-down was initiated without violating Defendant's constitutional rights. A reasonable officer would also understand Defendant's statements and behavior as consent. *See Little,* 270 N.C at 239, 154 S.E.2d at 65.

Defendant strenuously objected to the search, only after Officer Isaacs detected a bulge he believed to be contraband during the pat-down and, while holding the contraband from the outside, used his other hand to reach inside of Defendant's pocket. Defendant cited *Terry* by name, asking Isaacs to call his sergeant, and repeatedly describing Isaacs' more intensive search as "illegal."

As a prior record level III convicted felon with two prior convictions for resisting a public officer and multiple other prior drug-related convictions, Defendant had "ridden this rodeo" many times in order to cite the Supreme Court's decision in *Terry* by name. Officer Issacs may have also known from experience that drug dealers carry weapons and rent motor vehicles for drug transactions to avoid confiscation of their private vehicles. *See State v. Briggs*, 140 N.C. App. 484, 488, 536 S.E.2d 858, 860 (2000) (discussing an officer's awareness "that drug dealers frequently carry weapons"); *see also, e.g.*, *State v. Shuler*, __ N.C. App. __, __, 841 S.E.2d 607, 609 (2020) (drug dealer rented vehicle because he "was 'known to police' and 'just wanted to be in a different car so he could go and do whatever' ").

Officer Isaacs testified he felt what he "believed to be marijuana covered in cellophane" when he patted down the exterior of Defendant's jacket. At that point, and after Officer Isaacs had been shown larger wrapped paraphernalia items from inside the pocket by Defendant and was satisfied the "large grape" he felt was not a weapon, a *Terry* protective search for officer safety purposes was arguably replaced by probable cause for contraband.

### 2. Plain Feel

Even if Defendant revoked his consent or after Officer Isaacs was satisfied the object he felt was not a weapon, Officers Isaacs developed probable cause or an independent constitutional basis to reach inside of Defendant's jacket pockets to examine the contents. The State argues Officer Isaacs lawfully developed probable cause to believe Defendant possessed contraband, based upon his plain feel from the outside of Defendant's pocket of the object inside of his pocket to extend the search. Officer Issacs testified that the "large grape" object he felt during the pat-down was what he "believed to be marijuana covered in cellophane."

If "a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity *immediately apparent*, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons" and the officer may seize the contraband without first obtaining a warrant. *Briggs*, 140 N.C. App. at 489, 536 S.E.2d at 861 (emphasis

original) (citing *Minnesota v. Dickerson*, 508 U.S. 366, 375-76, 124 L. Ed. 2d 334, 346 (1993)).

### *i. Preservation*

As a threshold matter, the State argues Defendant did not raise the issue of plain feel to develop probable cause before the trial court. As a result, the State argues Defendant has not preserved this issue for appellate review.

As Defendant is effectively the appellee on this issue, this alternative argument that Isaacs' search exceeded its lawful scope is permitted by N.C. R. App. P. 10(c), which allows appellees to raise alternate bases in law to support judgments challenged on appeal. "This Court is free to and may uphold the trial court's 'ultimate ruling' based upon a theory not presented below" by "the party seeking to *uphold* the trial court's presumed-to-be-correct" ruling. *Hester*, 254 N.C. App. at 516, 803 S.E.2d at 16 (emphasis original) (quoting *State v. Bone*, 354 N.C. 1, 8, 550 S.E.2d 482, 486 (2001)). This issue is preserved and properly before us.

### *ii. Analysis*

In *Dickerson*, the Supreme Court of the United States concluded the search in question had:

> exceeded the scope of *Terry* because the incriminating character of the object felt was not *immediately apparent* to the officer. The Court emphasized that "the officer determined that the lump was contraband only after 'squeezing, sliding and otherwise manipulating the

contents of the defendant's pocket' -- a pocket which the officer already knew contained no weapon."

*Briggs*, 140 N.C. App. at 489, 536 S.E.2d at 861 (emphasis original) (quoting *Dickerson*, 508 U.S. at 378, 124 L. Ed. 2d at 347).

Officer Isaacs testified he "felt what [he] believed to be marijuana covered in cellophane" when he felt the outside of Defendant's jacket pocket with his flat hand. Officer Isaacs explained he could tell it was cellophane and stated, "the Defendant had on what looked like a jean jacket which is rough in texture. And so when putting my hand against the rough texture, I felt a bulge that felt like marijuana slide -- the jacket slide on the plastic of that bulge."

This Court has previously recognized a police officer's knowledge and experience is a factor to consider in upholding the seizure of contraband under the plain feel doctrine. When an officer feels a container, the shape of which by itself does not reveal its identity or the identity of its contents as contraband, the search may be upheld when such an invocation is made. *Id.* at 489-93, 536 S.E.2d at 861-63.

Defendant argues neither Officer Isaacs nor the State's attorney properly invoked the officer's knowledge and experience when explaining his conclusion at the suppression hearing. Officer Isaacs' testimony to support his conclusion the "large grape" he "believed to be marijuana covered in cellophane" was by plainly feeling the "rough in texture" jacket from the outside "slide on the plastic of that bulge."

The trial court asked the State before giving its ruling:

> how does he know it's marijuana in cellophane? How does he know it's not pipe tobacco in cellophane? How does he know he's not wrapping tobacco in cellophane? How does he know it's not instant grits in cellophane? I mean . . . what's magic about feeling a bulge and detecting some cellophane on it and there's something there?

The State's attorney replied that, beyond repeating what Officer Isaacs had stated in his testimony, she could not answer the trial court's questions.

Viewed in the light of a responsible officer with training and experience, the trial court and the majority's opinion erroneously conclude any evidence discovered or later seized without a warrant and as a result of Officer Isaacs exceeding the lawful scope of his pat-down, Defendant's consent, or without probable cause, would be "fruit of the poisonous tree" and excluded, unless the evidence seized was admissible under some other exception. The trial court properly admitted this evidence was admissible as the attenuated result of a search incident to an arrest for an additional crime.

### 3. *Defendant's Flight*

Presuming the scope of Defendant's consent or permissible pat-down was exceeded, and Officer Issacs did not develop probable cause of contraband, evidence in the record supports the trial court's unchallenged finding and conclusion: "Defendant's conduct constituted [a] legal basis for the Defendant having resisted, delayed and obstructed an officer in the course of his duties. . . . [B]y reason of the Defendant's bolting and running from Officer Isaacs, the officers had lawful authority to pursue and overtake him."

The trial court also properly found and concluded both "the search of the Defendant's person and the area where he was located was pursuant to a lawful arrest" and "Defendant's conduct after he bolted and ran of his own volition and accord gave rise to the admissibility of the contraband seized pursuant to said search" under the attenuation doctrine.

Defendant asserts the trial court erred in applying the attenuation doctrine because his flight from police was lawful, so no intervening circumstances or exceptions justify its application to allow admission of the evidence. The majority's opinion erroneously agrees with Defendant's assertion he could lawfully flee from Officer Isaacs' lawful traffic stop and demand for Defendant to exit the rental vehicle.

This Court has held "an invalid search and seizure, in violation of a defendant's Fourth Amendment rights, does not give that defendant a license to engage in subsequent criminal behavior." *State v. Barron*, 202 N.C. App. 686, 696, 690 S.E.2d 22, 29 (citations omitted), *disc. review denied*, 364 N.C. 327, 700 S.E.2d 926 (2010). This Court has also held "[a]lthough 'every person has the right to resist an unlawful arrest[,]' that right is limited to the use of 'such force as reasonably appears to be necessary to prevent the unlawful restraint of his liberty.'" *State v. Branch*, 194 N.C. App. 173, 174, 669 S.E.2d 18, 19 (2008) (quoting *State v. Mobley*, 240 N.C. 476, 478-79, 83 S.E.2d 100, 102 (1954)).

When Officer Isaacs' pat-down of Defendant detected Defendant's possession of illegal drugs and contraband, the undisputed evidence shows and the trial court found Defendant placed his hands on the officer's arm, resisted his search physically and verbally, and "bolted and ran of his own volition." At that point, Defendant's actions were clearly unlawful and put himself, the officers, and the public at grave risks. Defendant acted to remove the officer's hand from inside his pocket, while Officer Issacs continued to hold the contraband from the outside of Defendant's jacket. Defendant persisted and resisted after being warned "you need to stop," broke away, and unlawfully fled.

Physically confronting, pushing back, or placing hands on a police officer during a lawful stop, even if resisting a purportedly unlawful search, causes the encounter to rapidly escalate into a serious conflict and gives rise to injuries to the officers, bystanders, and to Defendant. The majority's opinion criticizes Defendant's actions that led to the events in this case, but nevertheless disregards the admonition it cites and rewards Defendant's lawlessness and fleeing from a lawful traffic stop with a new trial. This is both gross and dangerous error.

Our precedents clearly and unambiguously state: "no one is free to leave when they are stopped by a law enforcement officer for a traffic violation." *State v. Benjamin*, 124 N.C. App. 734, 738, 478 S.E.2d 651, 653 (1996). "Generally, an initial traffic stop concludes . . . only after an officer returns the detainee's driver's license

and registration." *State v. Jackson*, 199 N.C. App. 236, 243, 681 S.E.2d 492, 497 (2009) (citations omitted).

Officer Isaacs retained Defendant's driver's license throughout the pat-down and during the eventual chase and arrest. The admittedly lawful traffic stop was not concluded when Officer Isaacs' search purportedly exceeded Defendant's consent, its permissible lawful scope, or probable cause. The trial court found and properly concluded when Defendant broke away from Officer Isaacs, he was fleeing from a lawful traffic stop at the same time and committed a new crime. *See Benjamin*, 124 N.C. App. at 738, 478 S.E.2d at 653; *Jackson*, 199 N.C. App. at 243, 681 S.E.2d at 497.

The elements of resisting, delaying, or obstructing an officer in violation of N.C. Gen. Stat. § 14-223 are:

> (1) that the victim was a public officer;
>
> (2) that the defendant knew or had reasonable grounds to believe that the victim was a public officer;
>
> (3) that the victim was discharging or attempting to discharge a duty of his office;
>
> (4) that the defendant resisted, delayed, or obstructed the victim in discharging or attempting to discharge a duty of his office; and
>
> (5) that the defendant acted willfully and unlawfully, that is intentionally and without justification or excuse.

*State v. Washington*, 193 N.C. App. 670, 679, 668 S.E.2d 622, 628 (2008) (brackets and citation omitted). This Court has held "flight from a lawful investigatory stop may provide probable cause to arrest an individual for violation of [N.C. Gen. Stat. §] 14-223." *Id.* (citation omitted).

This precedent and fact distinguish this case from *State v. Joe* (*Joe I*), 213 N.C. App. 148, 711 S.E.2d 842 (2011), *vacated in part on other grounds*, 365 N.C. 538, 723 S.E.2d 339 (2012), which Defendant and the majority's opinion cite. In *Joe I*, the defendant fled from *a consensual encounter*, rather than an admittedly lawful investigatory traffic stop. *Id.* at 156, 711 S.E.2d. at 847. *Joe I* is inapposite and not applicable to the undisputed and unchallenged facts before us.

Defendant also argues Officer Isaacs' purportedly unconstitutional search unlawfully extended the traffic stop. A traffic stop prolonged beyond the "time reasonably required to complete [its] mission" is unlawful. *Rodriguez v. United States*, 575 U.S. 348, 357, 191 L. Ed. 2d 492, 500 (2015) (citation omitted). Our Supreme Court has interpreted *Rodriguez* to address unrelated inquiries during the stop, which "do not *measurably* extend the duration of the stop." *State v. Bullock*, 370 N.C. 256, 262, 805 S.E.2d 671, 676 (2017) (alteration omitted) (emphasis original) (quoting *Rodriguez*, 575 U.S. at 355, 191 L. Ed. 2d. at 499).

> It follows that there are some inquiries that extend a stop's duration but do not extend it measurably. In *Rodriguez*, the government claimed that extending a traffic stop's duration by seven or eight minutes did not violate the

> Fourth Amendment. The Supreme Court disagreed. But here, the frisk lasted eight or nine seconds. While we do not need to precisely define what "measurably" means in this context, it must mean something. And if it means anything, then *Rodriguez*'s admonition must countenance a frisk that lasts just a few seconds.

*Id.* at 262-63, 805 S.E.2d at 677 (citations omitted).

Defendant argues, and the majority's opinion erroneously agrees, Officer Isaacs' pat-down "measurably" extended the duration of the traffic stop under *Rodriguez*. Defendant also erroneously asserts the pat-down added "thirty-four seconds" to the traffic stop.

Defendant's argument and calculation of the time added starts from the initiation of the admittedly lawful traffic stop and Defendant exiting his rental vehicle with a knife in plain view, rather than the time Defendant objected when Officer Isaacs purportedly exceeded its lawful scope. Both officers' body cameras' recordings contain time stamps marking the duration of the entire stop. This video evidence shows Defendant objected to his pat-down roughly halfway through Defendant's asserted thirty-four second delay from the initiation of the pat-down until he "bolted and ran of his own volition."

We need not split hairs over fifteen seconds here or there on this point. Officer Isaacs did not pause, delay, or stop from his initiation of the pat-down until Defendant fled. He had not "*measurably* extend[ed] the duration of the [lawful] stop" at the time

Defendant unlawfully fled the lawful stop. *Id.* at 262, 805 S.E.2d at 676 (citation omitted).

The majority's opinion asserts, "Officer Isaacs's unconstitutional search into Defendant's jacket pocket had nothing to do with the 'mission' of the traffic stop. *See Rodriguez*, 575 U.S. at 354, 191 L. Ed. 2d at 498 (citations omitted)." The majority's opinion essentially argues *any* deviation from the "mission" of the stop is a more important factor than the measurable extension of the duration of the lawful stop. This bald assertion relies on neither *Rodriguez*'s command nor prohibition. *See id.*

In *Rodriguez*, but unlike here, the "mission" of the traffic stop had already been completed before the unconstitutional search prolonged the stop. *Id.* at 353, 191 L. Ed. 2d. at 498. The Supreme Court of the United States held an officer "may conduct certain *unrelated checks during an otherwise lawful traffic stop*. But . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* at 355, 191 L. Ed. 2d at 499 (emphasis supplied).

The Supreme Court in *Rodriguez* explicitly foreclosed the majority opinion's argument here: in the absence of a measurable extension or prolongation of the duration of the stop, which had not yet occurred before Defendant ran, *an "unrelated check" is permitted "during an otherwise lawful traffic stop." Id.* (emphasis supplied).

Defendant's flight from Officer Issacs' pat-down was unlawful, even presuming Officer Issacs' pat-down itself unlawfully exceeded Defendant's consent, *Terry*'s permissible scope, or occurred without probable cause. As correctly noted in the majority's opinion, this situation "could have been far worse. Defendant's flight put himself at risk of serious bodily harm and increased the risk of harm to the Officers in pursuit." Weapons were drawn, bystanders were imperiled, and Defendant was tased and fell.

The description and warning of the consequences of this issue in *Ferrone* is pertinent, but unheeded by the majority:

> Society has an interest in securing for its members the right to be free from unreasonable searches and seizures. Society also has an interest, however, in the orderly settlement of disputes between citizens and their government; it has an especially strong interest in minimizing the use of violent self-help in the resolution of those disputes. We think a proper accommodation of those interests requires that a person claiming to be aggrieved by a[n unlawful] search conducted by a peace officer . . . test that claim in a court of law and not forcibly resist . . . at the place of search.

*Ferrone*. 438 F.2d at 390.

Under all our precedents, Defendant did not possess the right to lawfully flee from Officer Issacs' purportedly unlawful search during an otherwise-lawful traffic stop. *See Barron*, 202 N.C. App. at 696, 690 S.E.2d at 29; *Jackson*, 199 N.C. App. at 243, 681 S.E.2d at 497; *Benjamin*, 124 N.C. App. at 738, 478 S.E.2d at 653.

Presuming the lawful scope of Defendant's consent and the *Terry* pat-down was exceeded, or probable cause was absent, the trial court did not err in concluding Defendant fleeing from a lawful stop "constituted [a] legal basis for the Defendant having resisted, delayed and obstructed an officer in the course of his duties." Defendant's argument promotes lawlessness, presents grave risks, and is properly overruled.

The trial court also properly found and concluded "the search of the Defendant's person and the area where he was located was pursuant to a lawful arrest" and "Defendant's conduct after he bolted and ran of his own volition and accord gave rise to the admissibility of the contraband seized pursuant to said search" under the attenuation doctrine. *See Strieff*, __ U.S. at __, 195 L. Ed. 2d at 407; *Hester*, 254 N.C. App. at 519, 803 S.E.2d at 18.

No prejudicial or reversible error in the trial court's order denying Defendant's motion to suppress supports awarding a new trial. Defendant's arguments are properly overruled. Because the majority's opinion awards a new trial on this issue, it fails to address Defendant's remaining issue.

## II. Motion to Dismiss Charges

Defendant argues the trial court erred as insufficient evidence supports submitting two distinct charges of possession of cocaine to the jury.

### A. Standard of Review

This Court reviews the trial court's denial of a motion to dismiss *de novo*. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citing *State v. McKinnon*, 306 N.C. 288, 298, 293 S.E.2d 118, 125 (1982)). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citations omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980) (citations omitted). The evidence is reviewed in the light most favorable to the State. *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995).

## B. Analysis

"In order for the State to obtain multiple convictions for possession of a controlled substance, the State must show distinct acts of possession separated in time and space." *State v. Moncree*, 188 N.C. App. 221, 231, 655 S.E.2d 464, 470 (2008) (citation omitted).

In *Moncree*, officers found marijuana in the defendant's car and, subsequent to his arrest, in his shoe. *Id.* at 231-32, 655 S.E.2d at 471. This Court found the evidence

supported the conclusion the defendant possessed both caches of marijuana simultaneously and, importantly, "there was no evidence that defendant possessed the marijuana for two distinct purposes." *Id.* at 232, 655 S.E.2d at 471 (citation and internal quotation marks omitted).

The State presented sufficient evidence tending to show Defendant possessed the two recovered caches of cocaine (one found near where he was arrested, one in his shoe) for two distinct purposes. Officer Isaacs testified the packaging of both the powder and crack cocaine recovered from the area around Defendant at his arrest was consistent with its purpose being for sale, and not consistent for personal use. After his arrest, Defendant voluntarily stated to Officer Isaacs the recovered drugs were for his personal use.

In the light most favorable to the State: "Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve." *Fritsch*, 351 N.C. at 379, 526 S.E.2d at 455 (citation omitted). Presuming the evidence regarding Defendant's distinct purposes for possessing each cache in this case contained "contradictions and discrepancies," those were properly submitted to the jury to weigh and decide. *Id.* The jury resolved any disputes in its verdicts. Defendant's argument is properly overruled.

## III. Conclusion

The trial court erred in concluding Officer Isaacs' pat-down of Defendant was unconstitutional at its initiation. Under the Defendant's consent to search analysis, the *Terry v. Ohio* pat-down analysis, or Officer Isaacs' articulating a basis of probable cause under plain feel for contraband, even if the search exceeded its lawful scope by searching inside of Defendant's pockets, while the officer held the object outside with his other hand, such action does not warrant exclusion of the illegal drugs. His subsequent flight from Officers Isaacs and Kelly from a lawful stop broke any illegal taint under the attenuation doctrine. *See Strieff*, __ U.S. at __, 195 L. Ed. 2d at 407; *Hester*, 254 N.C. App. at 519, 803 S.E.2d at 18.

Although Defendant may resist an unconstitutional search, he cannot restrain or move Officer Issacs' arm and be excused when he "bolted and ran of his own volition" from a lawful traffic stop. *See Jackson*, 199 N.C. App. at 243, 681 S.E.2d at 497; *Benjamin*, 124 N.C. App. at 738, 478 S.E.2d at 653.

The trial court correctly concluded Defendant's fight created the requisite probable cause to arrest him for resisting a police officer under N.C. Gen. Stat. § 14-223. The trial court's unchallenged findings and conclusions show it properly denied Defendant's motion to suppress. The evidence obtained as a result of the search incident to Defendant's lawful arrest was admissible.

Sufficient evidence supported submitting two distinct charges of possession of cocaine to the jury. "Contradictions and discrepancies" did not warrant dismissal of the charges. *See Fritsch*, 351 N.C. at 379, 526 S.E.2d at 455.

Defendant received a fair trial, free from prejudicial errors he preserved and argued. No reversible errors are shown to award a new trial. I respectfully dissent.